DANIEL HURLEY, JR., Appellant, *v.* UNION TRUST COMPANY OF ROCHESTER, Respondent.

Third Department, May 10, 1935.

*James M. Noonan* [*James M. Noonan* and *Samuel Jacobs* of counsel], for the appellant.

*Harris, Beach, Folger, Bacon & Keating* [*Nicholas E. Brown* of counsel], for the respondent.

McNAMEE, J. The action is brought to recover on three checks of $500 each drawn by the defendant bank of Rochester upon a bank in New York city, payable to the order of John A. Dicks, and sold to the payee. Dicks indorsed the checks and delivered them to the plaintiff. They were presented for payment, and payment was refused. Dicks made a statement to the defendant bank of the facts appearing in his opposing affidavit on the motion for judgment; and the defendant admits that thereafter it stopped payment pursuant to his directions. Plaintiff alleges that he is now the owner and holder of the checks.

The answer denies that the plaintiff is such owner and holder, and alleges by way of affirmative defenses that the checks in question were turned over to the plaintiff by Dicks within the State and within three months before the action was commenced, in payment

of losses sustained by Dicks in gambling with the plaintiff within the State, and pursuant to a gambling contract; that the delivery to the plaintiff was unlawful and without consideration, and, accordingly, that the plaintiff never acquired any title to the checks.

According to the pleadings and affidavits read on the motion for judgment, the plaintiff asserts that Dicks asked him to cash the checks in question, and that he did so by paying to Dicks the sum of $1,500 in currency of the United States in exchange for the checks. Dicks testifies that the three checks were indorsed by him and turned over to the plaintiff solely for the purpose of paying losses in gambling with plaintiff at roulette, and in compliance with a gambling contract; that he received no money, property, or other consideration therefor.

The plaintiff concedes that an issue of fact would arise on the pleadings if the defendant could avail itself of the defenses set up in the answer; but asserts that the checks were issued by the defendant to Dicks for a valuable consideration, were legal in their inception, that the defenses alleged were available only to the payee Dicks who is not a party, that plaintiff's possession was evidence of his title, that the drawee bank had an unqualified obligation to pay the checks when presented, and that the defendant bank violated its obligation to the plaintiff when it stopped payment.

In so far as pertinent here, the Penal Law declares gambling wagers, bets and stakes unlawful; and pronounces void all contracts on account of money, property or things in action wagered, bet or staked. It prescribes further that all things in action and every security given, where any part of the consideration is for money won by playing any game, or where the same shall be given to repay money advanced at the time and place for the purpose of such gaming, " shall be utterly void." (Penal Law, §§ 991, 992, 993.) Thus assuming the truth of the answer and the proofs submitted by the defendant, the conduct of the plaintiff and payee Dicks came clearly within the purview of the sections mentioned. But the question is, may the defendant interpose the defense of a gambling transaction between the payee and the plaintiff?

When the bank issued its check to the payee for cash, that particular money was not forwarded to the drawee bank to pay these checks, nor was any money set apart by either bank for the purpose. The issue of a check does not operate as an assignment of funds, nor does the drawee bank become unconditionally liable thereon. (Neg. Inst. Law, § 325.) The defendant bank became indebted to repay the sum involved in the course of business. This it could do through the checks in question, or, upon demand, could have paid direct and recalled the checks. Only the relation of debtor

and creditor was established by issuing the checks. Possession by the plaintiff was not irrebuttable proof of title. Within the facts as claimed by the defendant, the plaintiff was not a holder in due course. (§ 91, subd. 3.) The plaintiff could not lawfully negotiate the checks, because his title was defective. (§ 94.) If defendant's version of the facts is true, the transactions between plaintiff and Dicks were unlawful, and the attempt to pass title thereby was a nullity. Plaintiff's title would have been as sound and as complete if he had found the checks on the street, or if by some accident they had been transferred from the pocket of Dicks to the wallet of the plaintiff after they had been indorsed, or if they had been mailed to the plaintiff by mistake when it was intended to forward them to a lawful creditor, or for deposit in a bank. Both of the banks had notice of these facts, and that Dicks claimed ownership of the checks. With notice of this infirmity neither bank would take better title to the checks than the plaintiff had. (§§ 93, 94, 95, 97, 98; *Dresser* v. *Missouri & Iowa Railway Const. Co.*, 93 U. S. 92; *Albany County Bank* v. *People's Ice Co.*, 92 App. Div. 47, 50, 55; *Pearce & Miller Engineering Co.* v. *Brouwer*, 10 Misc. 502.) In these circumstances the bank may plead and prove that the plaintiff is not a holder in due course, and put plaintiff to his proof on that issue.

On the motion of the defendant to change the place of trial from Albany to Monroe county, a " proper county," the defendant submitted two affidavits. Each of the affiants states in his affidavit, on information and belief, that the plaintiff is not a resident of Albany county; that the sources of his information and the grounds of his belief are conversations with John A. Dicks of Rochester; that the latter stated that he " visited at the residence of the said plaintiff in Glens Falls, N. Y., within three weeks prior to the commencement of this action." Neither affiant stated that he is acquainted with the plaintiff in any degree, or has any personal knowledge of him or his residence.

John A. Dicks was one of the parties to the transaction out of which this action arose, but no proof from him of the fact of residence is submitted by affidavit or otherwise. Neither is there any proof in the moving papers of the facts showing the extent of acquaintance between Dicks and the plaintiff, nor how Dicks knew the residence of the latter; nor are there any facts stated which would justify the conclusion of Dicks that the plaintiff resided at one place or another, even if such statement were proof of the fact in question.

There was no proof of plaintiff's residence in any county other than Albany. Statements based on information and belief, when the sources of information and the grounds of belief are themselves

founded on hearsay, are not better proof than other rumors, and cannot outweigh positive and unimpeached evidence, nor move the court.

The opposing affidavit of the plaintiff states indicatively and categorically that he moved to the city of Albany with the intent to make that city his permanent residence, and that he did so on October 11, 1934, about a month before this action was commenced; that he registered and since that time has resided continuously at the New Kenmore Hotel in the city of Albany; that the city of Albany is his residence; that he does not reside in the city of Glens Falls. The opposing papers contain also the supporting affidavit of the manager of the New Kenmore Hotel, in which the manager testifies directly and of his own knowledge that he knows the plaintiff; that the plaintiff registered at his hotel on October 11, 1934, and that since that time he continuously resided there up to the time the affidavit was verified.

The residence of the plaintiff in the first instance is a matter of fact, of which intention is a part. And while such residence must be characterized by an element of permanency, it does not necessarily contemplate a permanent home, or domicile. In a degree, the word " residence " continues the meaning of its derivation, the Latin word *resido*, to sit down, to stay in a place, to settle, to remain; but for the purposes of this motion, however, it does not involve the intention never to leave the place where one settles. And the rule of practice determining the place of trial carries through the same general notion, a place where one abides with the intention of remaining; but not necessarily a continuous, final and ultimate abode. Neither does it mean an exclusive settlement. (*Bischoff* v. *Bischoff*, 88 App. Div. 126; *Stoddard* v. *Manzella*, 207 id. 519.) Since the amendment of 1925 (Laws of 1925, chap. 493), it may be said no longer that " residence " is quite synonymous with " domicile." (*Johnson* v. *Hoile*, 205 App. Div. 633; *Washington* v. *Thomas*, 103 id. 423.) For the purposes of section 182 of the Civil Practice Act, a party to an action is not confined to a single residence. The section itself provides that a person maintaining a residence in more than one county shall be deemed a resident of either. Thus if the proof were that the plaintiff was a resident of Warren county, still it would not exclude a possible residence in Albany county for the purpose of the trial. He might well have a residence in both. But the proof here fixes it in Albany. The record does not support the order made.

The order denying the motion to strike out the answer and for summary judgment should be affirmed, with costs; and the order

granting defendant's motion to change the place of trial from Albany county to Monroe county should be reversed, with costs.

HILL, P. J., RHODES, BLISS and HEFFERNAN, JJ., concur.

Order denying motion to strike out the answer and for summary judgment affirmed, with ten dollars costs and disbursements.

Order granting defendant's motion to change the place of trial from Albany county to Monroe county reversed on the law and facts, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.