OPINION OF THE COURT
Wachtler, J.
Plaintiff has brought this product liability action against General Motors Corporation seeking damages incurred in a one-car accident on September 12,1977 in Punxsutawney, Pennsylvania. The principal question on this appeal is whether the *26 plaintiff was a “resident” of New York at the time of the accident for purposes of CPLR 202, which applies the applicable Statute of Limitations of New York law to a cause of action which accrued in another State in favor of a resident but requires that a nonresident plaintiff’s action be timely under the applicable Statute of Limitations of both New York and the other State. Plaintiff asserts that he was a “resident” under CPLR 202 at the time of the accident because he was still then domiciled in New York. We agree with the lower courts that “residence” under CPLR 202 is distinct from “domicile”, and that the plaintiff was not a resident of New York on September 12, 1977.
Plaintiff Samuel Antone’s accident occurred while he v/as returning from dinner in his 1975 Buick Skyhawk to his place of employment, the Green Acres Nursing Home in Rossiter, Pennsylvania. Antone heard a loud grinding, felt the car shake violently, and then lost control as the car lurched suddenly to the left and struck a utility pole. Antone suffered serious injuries in the crash, including fractures of the pelvis and right hip, and was hospitalized for over one month.
Antone had purchased a used car on August 2,1976 from the Auto Shack, Inc., a car dealer in Jamestown, New York, which was not an authorized Buick dealer. Antone allowed his insurer to take title to the car following the accident and the insurer apparently sold it to a junkyard.
At the time of the accident Antone lived at the nursing home where he was employed. He had moved to Rossiter, Pennsylvania, from Olean, New York, in May 1977 when he began working for the nursing home. Prior to his move to Olean in 1972 he had lived in Jamestown, New York, for three or four years. During the five months prior to the accident Antone retained a post office box in Jamestown, New York, but did not maintain any place of residence in New York State.
For nearly three years following the accident Antone did not contact General Motors concerning his car and took no steps toward commencing a lawsuit. In June 1980 he received a letter from General Motors concerning a recall of 1975 Buick Sky-hawks due to possible problems with the wheel bearings which could lead to loss of control of the car. General Motors had concluded in late 1978 that a recall letter would be necessary, and it made efforts to determine who the owners were of the affected cars. Apparently because neither Antone nor the Auto Shack, Inc., notified General Motors of the change in ownership of Antone’s Buick, and because State records did not then indicate any such change, the recall letter was sent in February *27 1979 to the original owner of the car. Due to difficulties in reaching the original owner, the change in ownership did not become known to General Motors until mid-1980, at which time the recall letter was sent to Antone.
On August 27,1980 Antone commenced the present action by service of a summons and complaint. The complaint asserted claims sounding in negligence and strict liability and sought damages of $2,000,00o.[1] General Motors answered and then moved for summary judgment dismissing the complaint as untimely. The motion was based on CPLR 202, the “borrowing statute”, which states: “An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.” General Motors’ contention is that plaintiff was not a “resident” of New York at the time of the accident and that the applicable Statute of Limitations in Pennsylvania, where the cause of action accrued, is two years, making Antone’s action untimely since it was commenced over two years after the accident.
Special Term, applying CPLR 202, ordered a hearing on the question of Antone’s residence. Following the hearing Trial Term found that Antone had not met his burden of proving that he was a resident of New York at the time of the accident. The court specifically noted that it was determining whether Antone had a residence in New York at the time of the accident and not whether he was then a domiciliary of New York. Special Term subsequently granted General Motors summary judgment dismissing the complaint.
On appeal, the Appellate Division unanimously affirmed, without opinion.
CPLR 202 is a reenactment, without substantive change, of section 13 of the Civil Practice Act which in turn substantially reenacted section 390-a of the Code of Civil Procedure, added in 1902 (L 1902, ch 193). The primary purpose of CPLR 202 and its *28 predecessors is to prevent forum shopping by a nonresident seeking to take advantage of a more favorable Statute of Limitations in New York (National Sur. Co. v Ruffin, 242 NY 413, 417).[2] Under all three provisions the Statute of Limitations of the State where the cause of action accrued is not “borrowed” where the cause of action accrued in favor of a resident of New York.[3] Antone’s causes of action for negligence and strict products liability accrued in Pennsylvania, the State where the accident occurred (Martin v Dierck Equip. Co., 43 NY2d 583, 591). Thus, if he was not a resident of New York at the time of the accident his action must be dismissed unless it is timely under both New York and Pennsylvania law.
Plaintiff asserts that “resident” as used in CPLR 202 has the same meaning as “domiciliary” and claims that he remained domiciled in New York at the time of the accident. Establishment of a domicile in a State generally requires a physical presence in the State and an intention to make the State a permanent home (Rawstorne v Maguire, 265 NY 204, 208; Vernon, Conflict of Laws: Theory and Practice [2d ed, 1982], 3-84; Restatement, Conflict of Laws 2d, §§ 16, 18). The term residence, on the other hand, has been employed by Legislatures for a variety of purposes, often with a meaning which is different than that of domicile (see Reese and Green, That Elusive Word, “Residence”, 6 Vand L Rev 561; Restatement, Conflict of Laws 2d, § 11, Comment k).
New York has long recognized that “residence” and “domicile” are not interchangeable. In 1908 this court noted that the tvzo terms are not identical, recognizing, for example, that while a person can have but one domicile he can have more than one residence (Matter of Newcomb, 192 NY 238, 250). In 1925 the Legislature amended former section 182 of the Civil Practice Act, a venue provision, to provide that a person who maintained residences in more than one county would be deemed a resident of each county for venue purposes, thereby approving several Appellate Division decisions which distinguished “residence” from “domicile” for venue purposes (L 1925, ch 493; see 3 Weinstein-Kom-Miller, NY Civ Prac, par 503.02).
*29 Thus, by the time the CPLR was enacted in 1962 it was well established that “domicile” and “residence” were not synonymous terms. The CPLR was the product of six years of work by the Advisory Committee on Practice and Procedure and two years of review by several legislative committees. In light of this extremely thorough drafting process it is difficult to imagine that the drafters would have retained the term resident if they meant domiciliary. Indeed, in none of the Reports which discussed the proposed section 202 was there any suggestion that resident should mean domiciliary (see Advisory Committee on Practice and Procedure, 2d Prelim Report, NY Legis Doc, 1958, No. 13, p 45; id., 5th Prelim Report, NY Legis Doc, 1960, No. 20, p 20; Senate Finance Committee, 6th Report, Civ Prac Act Revision, NY Legis Doc, 1962, No. 8, p 69). In contrast, various other sections of the CPLR contain some form of the term domicile (see, e.g., CPLR 302, subds [a], [b]; 313; 327; 2502, subd [a], par 2). Furthermore, several of these sections contain both “residence” and “domicile”, with the terms generally separated by the disjunctive “or” (see CPLR 302, subd [b]; 313; 327). It is apparent that the Legislature, in enacting and revising the CPLR, has been aware of the distinction between residence and domicile and has not hesitated to use the latter term where appropriate.
Thus, it may be presumed that when the term “residence” is employed in the CPLR it is not equivalent to domicile. This presumption could be rebutted if, for example, there were specific legislative intent to the contrary or if any meaning other than domicile would clearly be inimical to the purpose of the underlying provision (see Crampton, Currie, Kay, Conflict of Laws [1975], 48; Reese and Green, That Elusive Word, “Residence”, 6 Vand L Rev 561, 562; cf. Rawstorne v Maguire, 265 NY 204, 208, supra).
As discussed above, nothing in the legislative history of CPLR 202 indicates that resident was intended to mean domiciliary. Additionally, the purpose behind CPLR 202 of discouraging forum shopping by plaintiffs who have no significant contacts with New York is better served by focusing on whether the plaintiff has a residence in New York rather than on whether he is domiciled in this State. For example, an individual who maintains a “permanent place of abode” in New York and spends over one half of a taxable year in the State is subject to taxation as a “resident” even if he is not domiciled in New York (Tax Law, § 605, subd [a], par [2]). If, in fact, such an individual were domiciled elsewhere, and resident in CPLR 202 were *30 interpreted as equivalent to domiciliary, this individual would be treated the same as someone with no contacts with New York, a result which would hardly be consistent with the statute’s purpose.
We thus hold that “resident” as used in CPLR 202 does not have the same meaning as “domiciliary”.[4] Rather, the determination of whether a plaintiff is a New York resident, for purposes of CPLR 202, turns on whether he has a significant connection with some locality in the State as the result of living there for some length of time during the course of a year (Matter of Newcomb, 192 NY 238; Hurley v Union Trust Co., 244 App Div 590; see Reese and Green, op. cit., 6 Vand L Rev, at p 563). Cases defining “resident” for purposes of venue under CPLR 503 are useful precedents (see, e.g., Siegfried v Siegfried, 92 AD2d 916; Hammerman v Louis Watch Co., 7 AD2d 817) because if an individual can show that he is a resident of a particular county in the State for venue purposes, he will also be a resident of the State itself for purposes of CPLR 202.
A review of the record here shows that the trial court used the proper meaning of “resident” in determining whether Antone was a resident of New York at the time of his accident. This determination was one of fact (Glaser v Glaser, 276 NY 296, 299), and as it was affirmed by the Appellate Division, and is supported by evidence in the record, it will not be disturbed by this court. Antone’s action must thus be timely under both the Pennsylvania and New York limitations periods.
As argued by General Motors to the trial court, Pennsylvania law contains a two-year limitations provision for personal injury causes of action of the type alleged by Antone.[5] Antone’s acci *31 dent occurred on September 12, 1977 and he did not commence this action until August 27, 1980. He now argues that even though his action was not commenced until more than two years after the accident, it is timely because Pennsylvania uses a “discovery” rule for actions to recover for personal injuries and he did not “discover” that he might have a cause of action against General Motors until he received the recall letter in 1980.
It is true that in “borrowing” a Statute of Limitations of another State, a New York court will also “borrow” the other State’s rules as to tolling (see Childs v Brandon, 60 NY2d 927; Martin v Dierck Equip. Co., 43 NY2d 583, 592, supra). Additionally, it does appear that Pennsylvania applies a “discovery” rule to limited classes of personal injury actions so as to create exceptions to the general rule that the two-year Statute of Limitations begins to run on the date of the plaintiff’s injury (see, generally, Anthony v Koppers Co., 496 Pa 119; Coyne v Porter-Hayden Co., 286 Pa Super Ct 1). Antone, however, did not raise the “discovery” rule argument before the trial court and thus that court had no occasion to determine whether facts existed to support application of the rule. Accordingly, Antone failed to preserve the issue and he cannot argue on appeal that the two-year Statute of Limitations did not begin to run on September 12, 1977.
Antone also claims that General Motors is equitably es-topped from asserting a Statute of Limitations alleging that General Motors deliberately concealed the need for the recall of 1975 Buick Skyhawks for several years, despite an obligation imposed on car manufacturers to notify purchasers of known safety-related defects.* ****[6] Even if we were to accept Antone’s argument, for which he has cited no support, that this requirement in Federal law creates a fiduciary relationship between a car manufacturer and a secondhand purchaser, we find no evidence in the record that General Motors knew that there was a problem with the wheel bearings prior to the commencement of the recall campaign. Additionally, the delay in notification to *32 Antone after the recall campaign began was not deliberate but was due, instead, to General Motors’ belief, based upon its own records and a check done with State motor vehicle offices, that the original purchaser of the car was still the owner.
Plaintiff’s final argument is that the trial court improperly denied his motion for leave to amend his complaint to add a cause of action for fraudulent concealment. There were, however, no facts presented to the trial court to support such a claim.[7] Rather, it appears that he was attempting to circumvent the two-year Statute of Limitations in Pennsylvania by realleging as fraudulent concealment, causes of action properly based on negligence and strict products liability (see Cover v Cohen, 61 NY2d 261, 274-275; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212, 215-216; cf. Brick v Cohn-Hall-Marx Co., 276 NY 259, 263-264). Thus, it was not an abuse of discretion for the trial court to deny Antone leave to amend the complaint.
Accordingly, the orders of the Appellate Division should be affirmed, without costs.
Chief Judge Cooke and Judges Jasen, Jones, Meyer, Simons and Kaye concur.
Orders affirmed, without costs.

. The complaint also sets forth a cause of action denominated as breach of express and implied warranties. Even assuming that Antone could bring such a claim, despite the lack of privity and the presence of a claim for strict products liability (see Steckal v Haughton Elevator Co., 59 NY2d 628; Martin v Dierck Equip. Co., 43 NY2d 583; Uniform Commercial Code, § 2-318), he apparently does not contest defendant’s assertion that the cause of action is untimely under both New York and Pennsylvania law and thus its dismissal was proper.

. Plaintiff’s argument that CPLR 202 applies only where the defendant is a resident of New York is not supported by either the language or history of the provision, and is contrary to the purpose of discouraging forum shopping by nonresident plaintiffs.

. Neither party disputes that application of the borrowing statute turns on whether plaintiff was a resident when the cause of action accrued and not when the action was commenced (see Banasik v Reed Prentice Div., 34 AD2d 746, affd 28 NY2d 770; cf. United States Fid. & Guar. Co. v Smith Co., 46 NY2d 498, 505).

. Our decision in Banasik v Reed Prentice Div. (28 NY2d 770, affg 34 AD2d 746) is not to the contrary. The Appellate Division opinion did appear to equate resident with domiciliary under CPLR 202. This court, however, affirmed, without opinion, and the facts as stated by the Appellate Division showed that there the plaintiff did not have a residence in New York at the time of her accident.

. 12 Pa Stats Ann, § 34, which was in effect at the time of the accident, stated in pertinent part: “Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards”. 42 Pa Stats Ann, § 5524, which became effective on June 27,1978, states in pertinent part: “The following actions and proceedings must be commenced within two years * * * (2) An action to recover damages for injuries to the person * * * caused by the wrongful act or neglect or unlawful violence negligence of another”. As was stated explicitly in the former version of the statute, the general rule is that the two-year period begins to run at the time of the injury (see Hahn v Atlantic Richfield Co., 625 F2d 1095, 1100 [applying Pa law]; Coyne v Porter-Hayden Co., 286 Pa Super Ct 1, 5).
*31 Although not expressly provided in the statutes until" a 1982 amendment of 42 Pa Stats Ann, § 5524, strict products liability claims have been held to be governed by the two-year provision applicable to personal injury actions based on negligence (see Hahn v Atlantic Richfield Co., 625 F2d 1095, 1103-1106, supra; Salvador v Atlantic Steel Boiler Co., 256 Pa Super Ct 330, 341-344).

. This statutory duty was enacted in the National Traffic and Motor Vehicle Safety Act of 1966 (Pub L 89-563, tit I, § 113), and as amended by the Motor Vehicle and Schoolbus Safety Amendments of 1974 (Pub L 93-492, tit I, § 102, subd [a]) is presently codified at 15 USC § 1411.

. As with his argument as to equitable estoppel, Antone’s claim here is predicated upon the assertion that General Motors deliberately concealed knowledge of the defect in 1975 Buick Skyhawks.