OPINION OF THE COURT
Stanley L. Sklar, J.
In this motion for summary judgment defendant G.D. Searle & Co. (Searle) seeks to apply New York’s "borrowing statute”, CPLR 202, to dismiss plaintiff’s products liability suit, brought to compensate the plaintiff for injuries she allegedly sustained due to the use of an intrauterine contraceptive device.
The action is brought against Searle as the manufacturer of the C-7 IUD, and against Bernardo Handszer, the doctor who inserted the device on November 20, 1978. The IUD remained in place until August 24, 1979, when it was removed in a California hospital after plaintiff, on a trip to visit her family, complained of pain and nausea. Plaintiff claims that she had experienced cramping and other symptoms associated with her use of the IUD periodically since December 1978.
At the California hospital plaintiff was allegedly informed *336 for the first time that the IUD was the cause of her distress which was attributed to pelvic inflammatory disease (PID) and other complications. She later read materials which suggested that there was a causal connection between the use of IUDs and PID. Plaintiff commenced the present suit against Searle on November 20, 1981.
Searle seeks summary judgment dismissing the complaint as time barred pursuant to CPLR 202, due to the alleged fact that plaintiff was not a New York resident at the time the cause of action accrued and because the cause of action allegedly accrued outside this State, in either New Jersey where plaintiff was a resident, or California where her condition was diagnosed.
Before analysis of the matter under CPLR 202 can be made the court must address the procedural history of the action in order to determine whether the defendant is estopped from the outset under New York State law from raising the affirmative defense of Statute of Limitations.
Plaintiff originally chose to institute her suit against Searle in New Jersey State court. The action was removed to Federal District Court in New Jersey by the defendant. It was apparently timely brought against Searle under New Jersey’s two-year Statute of Limitations applicable to personal injury actions regardless of the form of the action (NJ Stat Annot § 2A: 14-2; Raskin v Shulton, Inc., 92 NJ Super 315, 223 A2d 284) under which the accrual of the cause of action is measured from the date on which the injury is discovered or should have been discovered. (Viviano v CBS, Inc., 101 NJ 538, 503 A2d 296.)
While the New Jersey Federal action was still pending, the plaintiff commenced the present action on November 20, 1981 against Searle, and Handszer whom it is assumed could not be named in the New Jersey action for diversity or jurisdictional reasons. Searle’s attorney states that when she called an attorney with plaintiff’s former counsel to obtain an extension of time to serve an answer he suggested to her that the New Jersey action was going to be voluntarily discontinued. Searle’s attorney asserts that she was aware at the time that the New York action appeared time barred and that as a matter of strategy, when serving her answer, she omitted the Statute of Limitations defense in the hope that if plaintiff did in fact discontinue the New Jersey action, she would amend her answer to include the Statute of Limitations as a bar. She *337 then asserts that thereafter plaintiffs counsel asked her if she would withdraw the defense of prior action pending which Searle asserted in its answer. She agreed.
The parties to the Federal action then entered into a so-ordered stipulation of voluntary dismissal of the action. The stipulation states: "This matter in difference in the above entitled action having been amicably adjusted by and between the parties, it is hereby stipulated and agreed that the same be and it is hereby dismissed without costs against either party, without prejudice as to actions pending in any jurisdiction outside of the State of New Jersey.”
After the stipulation was executed Searle amended its answer as of right under CPLR 3025 (a) to delete the affirmative defense of prior pending action pursuant to the parties’ agreement, but used the opportunity to amend to include a new affirmative defense of Statute of Limitations. Plaintiff never moved to strike this defense which was interposed over eight years ago.
Plaintiff contends now for the first time that the terms of the stipulation precluded Searle from interposing a defense of Statute of Limitations because the amendment prejudiced plaintiff who had voluntarily relinquished her timely New Jersey action in reliance on the stipulation. Alternatively, plaintiff suggests that Searle should be equitably estopped from relying on the Statute of Limitations defense due to its allegedly wrongful conduct in misleading plaintiff, who had relied on the stipulation to protect her interest in her claim against Searle. Plaintiff’s former counsel asserts that "plaintiff’s New York counsel agreed with defense counsel that the New Jersey action was to be discontinued 'without prejudice’ to the rights of the plaintiff which existed at the time of the filing of the New Jersey action.” Former counsel asserts that this agreement was in exchange for Searle’s agreement not to incorporate the affirmative defense of prior action pending. He also further claims that "[a]t the time this arrangement was entered into, it was the clear understanding of the undersigned that 'the rights of the plaintiff which existed at the time of the filing of the New Jersey action’ included filing within time for the purpose of the statute of limitations.” He argues that the parties "intended” that the Statute of Limitations could not be raised.
Plaintiff also attempts to apply the concept of "relation back” contained in CPLR 203 (e), to make the New York State *338 court action an extension of the timely New Jersey Federal court one. In addition, plaintiff seeks to rely on the Court of Appeals upholding of an allegedly similar stipulation in the case of George v Mt. Sinai Hosp. (47 NY2d 170 [1979]).
None of these arguments suffices to estop Searle under New York law from raising the affirmative defense of Statute of Limitations. A stipulation is a form of contract to be interpreted under ordinary contract rules of construction and, as in any contract, when the intentions of the parties to the stipulation can be discerned from the unambiguous language of the document itself, the question of that intention is one without reference to matters extrinsic to the agreement. (Northrup Contr. v Village of Bergen, 129 AD2d 1002.)
The stipulation dismissing plaintiff’s New Jersey action is unambiguous and contains no language which would serve to bar Searle from raising any valid affirmative defense in the New York action. Where the stipulation states that dismissal is to be "without prejudice as to actions pending in any jurisdiction outside the State of New Jersey”, it clearly means that the discontinuance was not an adjudication on the merits. Although plaintiff argues that the usual goal of such stipulations is to limit the defenses which might be raised in the remaining action, such a goal is generally spelled out in the stipulation itself, and should not be imposed on the parties by the court.
There is no ground for invoking the doctrine of equitable estoppel against Searle to bar its reliance upon a Statute of Limitations defense. There is simply no evidence that any conduct of Searle’s led plaintiff into execution of the stipulation discontinuing her New Jersey action. The plaintiff does not dispute Searle’s contention that the discontinuance was wholly plaintiff’s choice, voluntarily made and effected. Defendant was under no obligation to inform plaintiff of the possibility that a Statute of Limitations defense might be raised. There is no indication of the type of "calculated conduct” upon which equitable estoppel can be based. (See, Peterson v Long, 136 Misc 2d 725.)
Nor is CPLR 203 (e) applicable in the present matter. Under this section a "claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.” The concept of "relating back” to an *339 earlier pleading may be used to add new defendants as well as claims to an amended pleading. (See, Duffy v Horton Mem. Hosp., 66 NY2d 473.)
Plaintiff argues that under New York law the present New York action is but a continuation of the New Jersey Federal action, so that all of the claims relate back to, and form a continuation with, the timely New Jersey action. The plaintiff has provided no precedent, however, for the application of CPLR 203 (e) to a separate and distinct New York action which parallels a similar action brought in another State which is voluntarily dismissed by the plaintiff.
Plaintiffs reliance on George v Mt. Sinai Hosp. (47 NY2d 170 [1979], supra) is misplaced. In George (supra, at 180; emphasis added), where the discontinuance "was specifically stated to be 'without prejudice to plaintiffs right * * * to commence any action pursuant to the authority of Section 205[1] of the CPLR’ ” (which grants a six-month period to institute a new action after termination of an earlier action in "any other manner than by a voluntary discontinuance”), the court, noting that "[t]he patent purpose of this disclaimer [was] to preserve whatever rights plaintiff would have had to commence a new action pursuant to the statute had the prior action been terminated by order of dismissal rather than by voluntary discontinuance”, held that the second action was timely commenced (supra, at 180-181). The court further stated that normally it would not extend its inquiry "beyond the fact that the prior action was terminated by means of a voluntary discontinuance, and to consider the reason for that discontinuance” because such an undertaking would "encourage the reopening of settled [cases] and abandoned suits” (supra, at 180). Thus the court concluded that "where the prior action has been terminated by means of voluntary discontinuance pursuant to a stipulation which contains no express statement of contrary intent, the statute simply does not authorize a subsequent action, regardless of the actual motives of the parties” (supra, at 180; emphasis added). Accordingly, since plaintiff has failed to establish estoppel or any extension of time under New York law, Searle’s motion for summary judgment based on the affirmative defense of Statute of Limitations must be considered.
*340 The motion raises several complex questions regarding plaintiffs place of residence as well as when and where her cause of action accrued for purposes of the "borrowing statute”.
CPLR 202 reads as follows: "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.”
Under this section the Statute of Limitations of another State might be applicable to bar plaintiffs claims if at the time her cause of action accrued she was not a resident of this State, and if the cause of action accrued in a State other than New York.
If plaintiff was a resident of New York at the time her cause of action accrued, New York’s three-year statute would apply regardless of where the cause of action arose and the action would be timely.
Throughout her deposition and in her answers to interrogatories posed by defendant, plaintiff unwaveringly attested to the fact that she was a New Jersey resident during the entire period from the date on which the IUD was inserted until its removal some eight months later. Allen testified at her examination before trial that she was living in New Jersey when she first saw Dr. Handszer in 1978. In response to Searle’s interrogatories during the relevant time period Allen gave an address in New Jersey as her only "residence”. Allen did not vote in New York, did not have her mail sent to New York and had a telephone in her name at her New Jersey residence. Now plaintiff claims that she was in actuality a New York resident during this period for purposes of CPLR 202, because she spent virtually all her time in New York, where she worked when she could get work as an actress, shopped, ate and slept "60 to 70 percent” of the time at the apartment of her boyfriend. She does however admit that she slept "from time to time” at her New Jersey residence and traveled "on the road” with her boyfriend, a musician, to Boston, Toronto and Washington during this crucial period.
In the case of Antone v General Motors Corp. (64 NY2d 20, 28) the Court of Appeals recognized that the use of the word "residence]” in CPLR 202 required a definition broader than *341 that implied by the word "domicile”, which requires both a physical presence in the State and evidence of an "intention to make the State a permanent home” (see, Rawstorne v Maguire, 265 NY 204, 208). Residence on the other hand is a more flexible concept. A person can establish residence in the State if he or she "has a significant connection with some locality in the State as the result of living there for some length of time during the course of a year.” (Antone v General Motors Corp., supra, at 30.)
The court in Antone (supra) found reference to CPLR article 5 venue cases useful. In the context of article 5 it has been said that in order to consider a place as one’s residence, the person "must stay there for some time and have the bona fide intent to retain the place as a residence for some length of time and with some degree of permanency * * *. Residence requires more stability than a brief sojourn for business, social or recreational activities” (Katz v Siroty, 62 AD2d 1011, 1012 [2d Dept 1978]; Siegfried v Siegfried, 92 AD2d 916 [2d Dept 1983]; Hurley v Union Trust Co., 244 App Div 590, 593 [3d Dept 1935]).
Plaintiff, in developing her argument that New York was her residence from November 1978 to August 1979, concentrates on the concept of a "significant connection”, as set forth in Antone (supra, at 30) but ignores the requirements that the connection arise "as the result of living there for some length of time” with the intent to retain the place as a residence. Plaintiff never states that she lived with her boyfriend in New York or considered his apartment as her home at all, much less than with "some degree of permanency”. Regardless of the number of nights she spent in New York, her stay was merely transitory, there being no indication at all that plaintiff intended to retain her boyfriend’s apartment for any length of time as her residence. The only residence which plaintiff has established is in New Jersey. She has failed to meet her burden of proving that she resided in New York. (Whiting v Miller, 188 App Div 825, 829 [1st Dept 1919].) Therefore plaintiff cannot avoid the effect of CPLR 202 on the grounds that she was a New York resident when her cause of action arose.
Because plaintiff was not a New York resident during the time she used defendant Searle’s IUD, application of New York’s three-year Statute of Limitations, which would sustain plaintiff’s cause of action, depends on where the cause of action arose. The issue is critical because the venues which *342 have been suggested by Searle as the locus of the accrual of plaintiff’s claim, New Jersey and California, have Statutes of Limitation shorter than New York’s and thus under these shorter Statutes of Limitation plaintiff’s action would be time barred. The question of when and consequently where plaintiff’s causes of action arose requires consideration of several key Court of Appeals decisions.
In Martin v Edwards Labs. (60 NY2d 417) the court specifically addressed the question of the accrual of a personal injury action arising out of the implantation or insertion of a device into the human body. In the companion case of Lindsey v Robins Co., determined concurrently with Martin (supra), the court ruled that the cause of action for injuries arising from the use of an IUD accrues with the "injury-causing malfunction of the product” (Lindsey v Robins Co., supra, 60 NY2d, at 425), which occurs with the unintended introduction of the infectious bacteria, which causes the injury, into the uterus (supra, at 428). The medical evidence in that case indicated that the introduction of the bacteria would necessarily predate by " 'a few days or weeks’ ” the diagnosis of the infection (supra, at 424).
Cases dealing with the problem of accrual for purposes of the borrowing statute do not conflict with Martin v Edwards Labs, (supra). In Martin v Dierck Equip. Co. (52 AD2d 463, affd 43 NY2d 583), a personal injury action stemming from the malfunction of a forklift, the court determined that the cause of action accrued when and where the injury occurred for purposes of the borrowing statute, thus subjecting a nonresident plaintiff to the shorter Statute of Limitations applicable in Virginia where the plaintiff sustained his injuries. (See also, Besser v Squibb & Sons, 146 AD2d 107, 112, n 3 [1st Dept 1989] [for purposes of the borrowing statute, a cause of action sounding in negligence or strict products liability accrues where the injury occurs].)
In the present context Searle contends that the injury to plaintiff occurred at the latest in August 1979, in California, where her condition was diagnosed and where the IUD was removed. Alternatively, Searle claims that the injury, if it occurred earlier than August 1979, must have occurred in New Jersey where plaintiff had her home.
In response plaintiff argues that New York should be considered as the place where the cause of action accrued because the device was inserted in New York, and because the plaintiff *343 allegedly was in this State when she first experienced the symptoms of the infection in December 1978, and where she had been "continuously for approximately one week prior” to the onset of the symptoms.
Plaintiff has provided the court with a physician’s affidavit in which he states that in his opinion "the pain symptoms that Jessica Allen experienced beginning in December of 1978 and January 1979 and experienced episodically thereafter until the removal of her IUD were causally related to the symptoms of the Pelvic Inflammatory disease which was thereafter diagnosed.” Searle has offered nothing to contradict this testimony. Therefore, according to Martin v Edwards Labs, (supra), plaintiff has offered proof that her cause of action arose some time prior to the onset of her first symptoms, in the period of roughly one month between the insertion of the IUD in November 1978, and December 1978. There is no reason to delay the onset of the injury until the diagnosis of plaintiff’s injury in California several months later, as defendant suggests, or to push the date backwards to encompass the date of insertion, an idea specifically rejected by the court in Martin v Edwards Labs. (60 NY2d 417, supra).[2]
While the cause of action accrued some time between November 1978 and December 1978, there still remains the question of where the injury occurred. The choice is apparently between New Jersey where plaintiff had her residence, and New York where the plaintiff was allegedly staying during the entire week before her symptoms began. Plaintiff’s expert physician in another affidavit offered his opinion that "there is no reasonable basis for determining within a reasonable degree of medical certainty where or in which state Jessica was when the injury causing bacteria entered her uterus.” Defendant agrees with this statement. In Martin v Edwards Labs, (supra), while the medical opinion did not pinpoint with exactitude the time when the bacteria entered the uterus and thus injured plaintiff, the entire time range given by the expert of a few days to a few weeks fell within the Statute of Limitations. Accordingly, there was evidence *344 from which the jury could properly conclude that the action was timely commenced. The court was not confronted with a situation in which it was claimed that the Statute of Limitations expired somewhere in that time span. In the instant case, however, the exact time of accrual is essential so as to ascertain where the cause of action accrued.
There is no question that plaintiffs cause of action accrued upon the unintended introduction of the harmful bacteria into her system in the days or weeks prior to the manifestation of physical symptoms. However, based on the opinion of plaintiffs expert, which opinion defendant adopted, it cannot be determined as a matter of fact when, or where, this event occurred. It is not helpful to know that the plaintiff was in New York and not New Jersey one week prior to the onset of her symptoms. There is simply no way at present, based on plaintiffs own expert’s opinion, to determine whether the bacteria entered plaintiffs body during that time or before.[3]
While a defendant has the burden of proving that the Statute of Limitations has expired, in this highly unusual circumstance where plaintiff admits and defendant concurs that the time and place of accrual cannot be ascertained, defendant would be deprived of its defense. Clearly, the Legislature intended that every defendant be entitled to rely on the borrowing statute if appropriate and on any applicable Statute of Limitations. Moreover, in response to a motion to dismiss because of the Statute of Limitations, it is the plaintiff who has the “obligation * * * of going forward with [the] evidence that [the] injury occurred within” the applicable period. (Martin v Edwards Labs., supra, at 429.) Here plaintiff has failed to do so and admits that she is incapable of doing so.[4] Although the question of accrual is clearly one of fact, which ordinarily would be preserved for a jury, the answer here is one of pure speculation which a jury cannot be expected to give. Therefore, in this highly unusual instance the question of which statute to apply, that of New York or New Jersey, must be resolved by the court as a matter of law.
Recourse must be made to the purposes for which the borrowing statute was enacted. The statute obviously favors *345 New York residents; its primary purpose is to prevent "forum shopping” on the part of nonresident plaintiffs (Daigle v Leavitt, 54 Misc 2d 651, 652) and "to give resident defendants the benefit of the shortest period of limitations” (Martin v Dierck Equip. Co., 52 AD2d 463, 468, affd 43 NY2d 583, supra).
The Appellate Division, Second Department, decided in Martin v Dierck Equip. Co. (supra) that the place of injury in an action pleading both negligence and breach of warranty could be determined for purposes of CPLR 202 by utilizing modern conflict of laws doctrines under Babcock v Jackson (12 NY2d 473), while bearing in mind the purposes behind the borrowing statute. When the Court of Appeals affirmed the Appellate Division’s decision, it did so without recourse to conflict of laws standards, choosing instead to recognize the place where the injury to the plaintiff occurred as the place of accrual for CPLR 202.
The court did not determine that the Appellate Division’s analysis was improper, however, and in fact noted that its own analysis comported with applicable State interests.
Because of the impasse created by the seemingly unanswerable question of where plaintiff’s cause of action arose in the present case, some consideration of conflicts of laws principles is appropriate. The current analytical approach utilized by New York’s courts for resolution of conflicts of laws questions is the "interests analysis” described in Schultz v Boy Scouts (65 NY2d 189; see also, O’Donnell v NPS Corp., 133 AD2d 73). As articulated in O’Donnell (supra, at 74), this analysis "entails a substantive determination of which jurisdiction has the greatest interest in the litigation.” In tort actions such as O’Donnell v NPS Corp. (supra), which concerned the validity of a claim for wrongful discharge, the contacts to be considered significant where the domiciles of the parties and the locus of the tort.
In the matter at hand plaintiff has stressed the contacts she had with the State of New York where she allegedly did most of her shopping, eating and sleeping, and where she worked when she could as an actress. However, her contact with the State, as earlier determined, did not reach the level of a deliberate intention to reside in the State and was, in fact, transitory in nature. While the IUD was inserted into plaintiff by a New York physician, in New York, it is also true that she was a longtime New Jersey resident when the bacteria *346 causing her injury entered her system. The above considerations do not point convincingly to either jurisdiction as having a superior interest in the litigation. However, if CPLR 202 is the "particular” law whose purpose must be considered (O’Donnell v NPS Corp., supra), then the balance clearly tips towards application of the shorter New Jersey Statute of Limitations to restrict the nonresident plaintiffs access to this State’s courts where the cause of action may have occurred in either New York or New Jersey.[5] More simply, it could be said that where the place of accrual under CPLR 202 cannot be determined as between New York and another State, the shorter of the two States’ Statutes of Limitation will apply where the plaintiff is a nonresident of this State. Consequently, plaintiff’s action must be governed by the shorter New Jersey Statute of Limitations and her claim against Searle dismissed. Plaintiff cannot claim to be surprised by this result since she herself recognized the applicability of New Jersey law by commencing her original timely action in that State. (See, Martin v Dierck Equip. Co., supra, 43 NY2d, at 592.)
Accordingly, the Statute of Limitations of New Jersey must be borrowed. This, however, does not resolve the issue of whether Allen’s action is time barred because in borrowing New Jersey’s Statute of Limitations, its tolling rules must also be applied. (Childs v Brandon, 60 NY2d 927, 929 [1983]; Antone v General Motors Corp., 64 NY2d 20, 31, supra.)
The court’s analysis of New Jersey cases is deleted for publication. The court concludes that the action was tolled, so that Searle’s motion to dismiss Allen’s action as time barred is denied.
[Portions of opinion omitted for purposes of publication.]

. I note that CPLR 205 standing alone does not apply to actions of sister States. (Baker v Commercial Travelers Mut. Acc. Assn., 3 AD2d 265, 266 [4th Dept 1957], appeal dismissed 4 NY2d 828.)

. Plaintiff has also suggested that her cause of action might have arisen in Washington, D.C., where she experienced symptoms while traveling through that city prior to her trip to California. Washington, D.C., like New York, has a three-year statute, under which plaintiff’s claim would be sustained. However, plaintiff herself has provided the unrefuted evidence of an earlier date of accrual which indicates that her infection existed long before her trip to Washington, D.C.

. The difficulties presented by this case suggest that a discovery rule would be easier to apply.

. The quoted language might be limited to motions to dismiss when the defendant has made a prima facie showing that the Statute of Limitations bars the action.

. This is especially so if defendant Handszer is a New York resident entitled to the shorter limitations period. This is not addressed in the present motion. Searle is incorporated in Illinois.