*506 OPINION OF THE COURT
Alan D. Scheinkman, J.
This is an application by plaintiff to release the above-captioned residential foreclosure action from the Foreclosure Settlement Conference Part, Supreme Court, Westchester County (hereafter FSCP). Pursuant to an order of this court entered March 11, 2013, a framed-issue hearing was conducted by a court attorney-referee on March 21, 2013. The said referee submitted a report to the court, to which were annexed documents that were admitted as exhibits at the hearing and the transcript of the hearing minutes. This court has read and adopts the referee’s report, has read the transcript, and has reviewed all of the exhibits offered by the parties at the hearing. The court has also read a letter from the Balkos’ attorney dated April 2, 2013, and a Final Affirmation (of plaintiff’s counsel) in Support of Application to Release this Action from Foreclosure Settlement Conference Part dated April 2, 2013.
Upon consideration of all of the foregoing, and for the following reasons, the application is granted.
Factual and Procedural Background
This residential foreclosure action was commenced by filing with the Westchester County Clerk a summons and complaint on August 29, 2012. On October 18, 2012, the defendants/ borrowers, Christine Balko and Bohdan Balko (hereafter Christine and Bohdan, respectively, and collectively, the Balkos), filed an answer and counterclaims. On October 29, 2012, the Balkos filed a specialized request for judicial intervention (hereafter RJI) indicating that a mandatory settlement conference was required under rule 3408 (a) of the Civil Practice Law and Rules. Consequently, the action was transferred to the FSCIJ where both parties appeared — plaintiff by counsel, and the Balkos with counsel — on February 8, 2013. At that conference, plaintiff objected and argued that a settlement conference was not required because the subject property was not occupied by either of the Balkos as their principal dwelling within the meaning of section 1304 (5) (a) (iii) of the Real Property Actions and Proceedings Law, and neither was a resident thereof within the meaning of CPLR 3408 (a). In sum, plaintiff contended that although the Balkos own the subject property — which is located at 52 University Avenue, Yonkers, New York — and are named on the note and mortgage, each of the Balkos is actually a resident of property located at 42 University Avenue, Yonkers, New *507 York, adjacent to the subject property, and neither of them occupied the subject property as their principal dwelling.
Consequently, this court ordered that a framed-issue hearing be conducted concerning the following issue:
“Has plaintiff satisfied its burden to establish that the Balkos are not entitled to a mandatory settlement conference either because at the time they executed the loan secured by the subject property said property was not or would not be occupied by one of them as her/his principal dwelling within the meaning of RPAPL 1304(5) [a] (iii), or because at the time they filed the RJI neither of the Balkos was a resident of the subject property within the meaning of CPLR 3408(a)?”
At the framed-issue hearing plaintiff offered, among other things, copies of the following: a pay stub from Bohdan’s employer addressed to him at 42 University Avenue (see court’s exhibit l-O); an Internal Revenue Service form 4506-T, signed by Christine and Bohdan, and dated February 4, 2013, in which they represented their address as 42 University Avenue (see exhibit 1-N); a 2012 IRS Wage and Tax Statement from Christine’s employer indicating her address as 42 University Avenue (see exhibit 1-L); Christine’s New York State driver’s license, issued July 8, 2003, and listing her address as 42 University Avenue (see exhibit 1-M); Bohdan’s New York State driver’s license, issued January 31, 2005, and listing his address as 42 University Avenue (see exhibit 1-M); a 2007 Internal Revenue Service form 1040 tax return filed jointly by Christine and Bohdan in which they represented their address as 42 University Avenue (see exhibit 1-K); and two documents, each entitled “Occupancy Statement,” that were executed by Christine and Bohdan on July 26, 2006 and March 3, 2009, respectively, the dates on which they closed on loans from plaintiff secured by mortgages on 42 University Avenue, and in each of which they certified “that our intent in seeking this loan is to obtain financing for the refinance of a home to be used as our principal residence, with occupancy to begin immediately after the close of escrow and to extend for an indefinite period of time into the future,” and that they “recognize that any loan made pursuant to this application is contingent upon owner occupancy” (see exhibits 1-B, 1-C).
Christine and Bohdan, and their daughter, Larysa Balko (hereafter Larysa), testified for the Balkos and were cross- *508 examined by plaintiffs counsel. None of the documents offered or testimony presented by the Balkos refuted the authenticity of any of plaintiffs submissions or the accuracy or truth of the information contained therein. Indeed, the Balkos have never contended that they do not reside at 42 University Avenue and the testimony they presented at the hearing established that, for example, the Balkos always used 42 University Avenue as their address on their income tax returns, most if not all of the mail for members of the Balkos’ family is addressed and delivered to 42 University Avenue, and Christine’s, Bohdan’s and Larysa’s driver’s licenses listed their addresses as 42 University Avenue until Larysa and Bohdan changed their addresses to 52 University Avenue on November 28, 2012, and March 10, 2013, respectively.[1] Rather, the Balkos contend that they reside at 42 University Avenue and 52 University Avenue simultaneously.
Both properties are located in the same residential, two-family zoning district. According to the testimony presented by the Balkos, they own the property at 42 University Avenue and have resided for many years in one of its two units with their two children, and they lease the other unit to a tenant. The Balkos’ unit consists of two bedrooms, one bathroom, kitchen, dining room and living room.
The Balkos purchased the neighboring property at 52 University Avenue, and executed the loan at issue, in 2004. Bohdan’s mother was ailing and living in Rochester, New York, and the Balkos relocated her to 52 University Avenue so they could care for her. The Balkos leased the two, zoning-compliant units at 52 University Avenue to tenants and used what Bohdan describes as an “inlaw apartment” on the ground floor for his mother. The in-law apartment consists of a bedroom, bathroom and combination living room/eat-in kitchen. The buildings on the properties are not connected, and the distance from the entrance to the Balkos’ unit at 42 University Avenue to the nearest entrance to the in-law apartment is approximately 35 to 40 feet.
Bohdan’s mother died in 2008. Thereafter, different members of the Balkos’ immediate family have used the in-law apartment at different times for different purposes. For example, because Bohdan’s employment requires that he be on call and he can be called in at odd hours, he sometimes sleeps in the in-law apart *509 ment so as not to disturb the rest of the family; for the same reason, Christine occasionally sleeps there while Bohdan sleeps in their bedroom at 42 University Avenue. Christine testified that since 2008 she has kept personal belongings at the in-law apartment, and that she kept separate sets of clothing, toiletries and linens at the in-law apartment and 42 University Avenue. Larysa testified that she occasionally used the in-law apartment to study or to work on projects while she was attending college between 2005 and 2009. Larysa testified further that she is now 25 years of age and that she has resided in the in-law apartment continuously since August 2012; in other words, Larysa was no younger than 24 years of age, and legally emancipated from her parents, when she first took up continuous residence in the in-law apartment. There was no testimony or other evidence that the Balkos’ other child has ever used or currently uses the in-law apartment.
Discussion
Plaintiff has satisfied its burden to establish that the Balkos are not entitled to a mandatory settlement conference. Pursuant to CPLR 3408 (a), the court shall hold a mandatory settlement conference “[i]n any residential foreclosure action involving a home loan as such term is defined in section thirteen hundred four of the real property actions and proceedings law, in which the defendant is a resident of the property subject to foreclosure” (emphasis added). Pursuant to RPAPL 1304 (5) (a), “ ‘Home loan’ means a loan ... in which . . . (iii) The loan is secured by a mortgage ... on real estate improved by a one to four family dwelling . . . which is or will be occupied by the borrower as the borrower’s principal dwelling” (emphasis added). Consequently, in order for a foreclosure action to be eligible for a mandatory settlement conference the borrower must have occupied or intended to occupy the subject property as his principal dwelling when the loan was executed and must have been residing in the subject property when the foreclosure action was commenced. (See HSBC Bank USA v McKenna, 37 Misc 3d 885, 895-896 [Sup Ct, Kings County 2012].)[2]
The Balkos contend that their role as caretakers for Bohdan’s mother made the in-law apartment in which they performed *510 that role their principal dwelling within the meaning of KPAPL 1304 (5) (a) (iii). However, while a person may own more than one dwelling, axiomatically only one can be his principal dwelling. (Cf. Scott v Long Is. Sav. Bank, F.S.B., 937 F2d 738, 741 [2d Cir 1991] [construing “principal dwelling” under the Truth in Lending Act].) And no matter how much time Christine and/or Bohdan may have devoted to caring for Bohdan’s mother, or how many nights either of them may have spent with her in the in-law apartment, the evidence establishes that from the execution of the loan secured by 52 University Avenue in 2004 until her death in 2008 the Balkos maintained their unit at 42 University Avenue as their principal dwelling.
Moreover, even assuming arguendo that 52 University Avenue had constituted Christine’s or Bohdan’s principal dwelling between 2004 and 2008, the instant action is not eligible for a mandatory settlement conference because neither of them was a resident of the property within the meaning of CPLR 3408 (a) when the action was commenced in August 2012 — or, for that matter, when the Balkos filed the RJI in October 2012. Where, as in CPLR 3408, the term “resident” is used but not defined, its meaning may be construed from the specific legislative intent of the statute in which it is used. (See Antone v General Motors Corp., Buick Motor Div., 64 NY2d 20, 29 [1984] [discussing residence versus domicile in determination of applicable statute of limitations under CPLR 202]; Matter of Newcomb, 192 NY 238, 250-252 [1908] [discussing residence versus domicile in the context of a probate proceeding].)[3] CPLR 3408 (a) mandates that conferences shall be held “for the purpose of holding settlement discussions . . . including, but not limited to determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home.” Thus, in the context of CPLR 3408, a borrower’s residence is the equivalent of his home; in other words, the one place where he lives as opposed to a space that he merely occupies occasionally, such as, for example, a house or apartment used as an alternative to or respite from home.
Applying this construction to the facts herein, on the date the instant action was commenced the Balkos’ home was the unit in which they lived with their minor child at 42 University Avenue and it has remained their home continuously since that date, so that the loss of 42 University Avenue would leave them without *511 their home.[4] In contrast, the Balkos and their minor child would still have their home if they were to lose 52 University Avenue.
The Balkos’ argument that the in-law apartment is an extension of their living quarters at 42 University Avenue is unavailing for several reasons. Firstly, the buildings in which the two spaces are located are themselves located on two separate and distinct pieces of real estate; so it is not as if the in-law apartment were part of an auxiliary structure — a detached garage or guest house, for example — located on the same property. Secondly, there is no physical connection between the two buildings; so the in-law apartment would have served the Balkos’ post-2008 purposes just as well if it were located in the next block, the next neighborhood or the next municipality, rather than next door. Finally, the evidence establishes that Larysa has lived in the in-law apartment as an emancipated adult — in other words, it has been her home — continuously, at least since the instant action was commenced. Consequently, the Balkos had no legal obligation to provide housing for her and, having done so, the fact that they chose to provide that housing outside their unit at 42 University Avenue did not make that housing their home within the meaning of CPLR 3408 (a). Nor does the fact that one or the other of Larysa’s parents may occasionally visit or spend the night at her home make it their home within the meaning of CPLR 3408 (a).
Accordingly, for the foregoing reasons, plaintiffs application is granted and it is hereby ordered that the instant action is not eligible for a mandatory settlement conference under CPLR 3408 (a), and it is further ordered that this action is hereby released from the Foreclosure Settlement Conference Part, and it is further ordered that the Chief Clerk of the Westchester Supreme and County Courts be and is hereby directed to randomly reassign this action to an Individual Assignment System Part, Supreme Court, Westchester County.

. In other words, after the Balkos filed the RJI.

. It is not necessary that the borrower remain in the subject property while the conferences are being conducted. (See One W. Bank, FSB v Greenhut, 36 Misc 3d 1205[A], 2012 NY Slip Op 51197[U], *4 [Sup Ct, Westchester County 2012].)

. The parties do not cite, and this court is unaware of, any opinion of the appellate courts of this state defining the term in the context of CPLR 3408.

. Whether the family could “live” in the smaller quarters at 52 University Avenue is irrelevant because the in-law apartment could not be used for that purpose under the Yonkers zoning code; also, when the instant action was commenced Larysa was already living in the in-law apartment and the two other units were leased to tenants.