**Palmina HART and James Hart, Plaintiffs,**

v.

**Raymond J. BATES, Jr. and Oyster Bay Tire Company, Defendants.**

No. 93–CV–1374.

United States District Court, E.D. New York.

Sept. 7, 1995.

Lenahan & Dempsey, P.C., Scranton, PA, for plaintiffs.

Rivkin, Radler & Kremer, Uniondale, NY, for defendant Raymond J. Bates, Jr.

*MEMORANDUM AND ORDER*

BLOCK, District Judge:

Defendant Raymond J. Bates, Jr. ("Bates") moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) seeking dismissal of plaintiffs' complaint on statute-of-limitations grounds.[1] The Court has converted the motion to one for summary judgment under Fed.R.Civ.P. 56.[2] Resolution of this motion centers on the interaction in diversity cases of federal and state laws governing the ascertainment and tolling of the applicable statute of limitations. For the reasons set forth below, the motion is denied.

## I.

### *BACKGROUND*

As alleged in the complaint, on April 14, 1991 plaintiff Palmina Hart ("Hart"), a Pennsylvania resident, while walking alongside a roadway in Pennsylvania, was struck by an automobile owned by Bates, a New York resident, and operated by his son. On March 30, 1993, almost two years later, Hart initiated this diversity action against the defendants for injuries she allegedly suffered as a result of this accident by filing her complaint with the Clerk of the Court pursuant to Fed.R.Civ.P. 3. Her husband, co-plaintiff James Hart, joined in her lawsuit for loss of consortium. The gravamen of the complaint against Bates is that he negligently entrusted his automobile, which allegedly had faulty brakes, to his son.[3]

Personal service was effected upon Bates on July 13, 1993, 105 days from the date the complaint was filed; well within the 120–day time requirement under Fed.R.Civ.P. 4(m) for service of process and the three-year statute of limitations under New York State

---

1. Bates' motion also raised the issue of sufficiency of service of process. That portion of the motion has been withdrawn. The other defendant, Oyster Bay Tire Company, has not interposed any motions.

2. Rule 12(c) provides in pertinent part: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

3. Plaintiffs' theory of liability against the co-defendant Oyster Bay Company, an automobile repair shop, is predicated upon this defendant's alleged improper issuance of an inspection sticker for the automobile.

law. *See* N.Y.Civ.Prac.L. & R. 214(5) (Consol.1990). Under Pennsylvania law, however, personal injury actions based upon negligence must be commenced within two years, 42 Pa. Cons.Stat.Ann. § 5524(2), and under its civil rules of procedure an action is commenced by filing with the prothonotary either a complaint or a praecipe for a writ of summons. Pa.R.Civ.P. 1007.[4] Subject to certain qualifications, Pennsylvania's civil procedure rules further provide that once an action has been commenced, a plaintiff has 90 days thereafter to effect service of process upon an out-of-state defendant, such as Bates. Pa.R.Civ.P. 404.

Bates contends that plaintiffs' action is time-barred under Pennsylvania's two-year statute of limitations because service of process was made 105 days after the complaint was filed, and two years and 89 days after the accident occurred.

## II.

### DISCUSSION

#### A. The Applicable Statute of Limitations

■ In diversity actions a district court must apply the statute of limitations that the state in which it sits would apply. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In so holding in *York*, the Supreme Court, applying the principles underlying *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), reasoned that a statute of limitations does not concern "merely the manner and the means by which a right to recover, as recognized by the State, is enforced," but "significantly affect[s] the result of a litigation ... that would be controlling in an action upon the

same claim by the same parties in a State court." 326 U.S. at 109, 65 S.Ct. at 1470. Hence, "[a]s to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law." *Id.* at 110, 65 S.Ct. at 1470.

■ Normally, "New York will apply its own statute of limitations even though the injury which gave rise to the action occurs in another state." *Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir. 1981). However, "New York's limitations of actions laws are supplemented by a borrowing statute [N.Y.Civ.Prac.L & R. 202] which provides that an action cannot be maintained [by a non-resident] if it is barred by the statute of limitations of the state where the cause of action accrued." *Stafford*, 668 F.2d at 147–48 (quotation omitted). *See also Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 353 (2d Cir.1990) ("In order to determine what statute of limitations New York would apply, a district court sitting in New York must consider the borrowing rules found in [N.Y.Civ.Prac.L & R. 202].")[5]

While the literal reading of section 202 would preclude plaintiffs from availing themselves of New York's three-year statute of limitations because the cause of action accrued in Pennsylvania, there is recent decisional law from the Appellate Division of the Supreme Court of New York holding that the borrowing statute is inapplicable if the defendant is not amenable to suit in the other state. *See Rescildo by Rescildo v. R.H. Macy's*, 187 A.D.2d 112, 115, 594 N.Y.S.2d 139, 140–41 (1st Dep't 1993). Although New York's highest court has yet to address this issue, the Second Circuit in *Stafford* opined, prior to *Rescildo*, that since "[t]he main pur-

---

4. The prothonotary is the functional equivalent of the Clerk of this Court, *see* 42 Pa.Cons.Stat.Ann. §§ 2732–37, and a praecipe for writ of summons is a legal document which provides a defendant with notice that a particular plaintiff has commenced a lawsuit against that defendant. *Id.* 1351. *See Robinson v. Nutter*, 1995 WL 61158, at *1 (E.D.Pa. Feb. 14, 1995) ("The praecipe for writ of summons merely requires notice that the plaintiff has commenced a lawsuit against the defendant.").

5. The 1990 Practice Commentary to section 202 explains how New York courts treat a litigant's burden with respect to the borrowing statute:

"Under conflict of law principles, a New York court normally applies its own statute of limitations. CPLR 202, the borrowing statute, is an exception. It has been held, therefore, that when a party seeks to wrap himself in the protection of a foreign statute of limitations, that party, whether he is plaintiff or defendant, bears the burden of proving that he is entitled to the benefit of the foreign statute of limitations. This means that he has to prove that the plaintiff is a non-resident, that the cause of action accrued outside New York, and that the foreign period of limitations has expired."

pose of the borrowing statute is to prevent forum shopping by plaintiffs, ... the New York Court of Appeals would decide that a cause of action cannot accrue for purposes of New York's borrowing statute in a state which could not exercise jurisdiction over the cause of action." *Stafford*, 668 F.2d at 152–53. *Rescildo* reinforces the efficacy of this opinion. Therefore, it is clear here, as it was in *Stafford*, that "the policies underlying New York's borrowing statute are not served in any way by applying the limitations period of Pennsylvania to bar a cause of action which never could have been brought in Pennsylvania." *Id.* at 152.

Thus, the Court must determine whether plaintiffs could have obtained *in personam* jurisdiction over Bates in Pennsylvania, which turns on the application of that state's long-arm statute, 42 Pa. Cons.Stat.Ann. § 5322(b). It provides in pertinent part:

> [T]he jurisdiction of the tribunals of this Commonwealth shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and *may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.*

*Id.* (emphasis added). Since Pennsylvania equates its long-arm statute to the full reach of the Constitution, the Court must decide whether the due-process requirements under the Constitution would have been met if Bates had been sued in Pennsylvania.

■ Under the seminal *International Shoe* case, "[d]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quotation omitted). In determining whether "minimum contacts" exist, the Court must weigh the relevant acts to determine if "the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." *Kulko v. Superior Court of Cal.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (*quoting International Shoe,* 326 U.S. at 316–17, 66 S.Ct. at 158–59). A single act or occasional acts can invoke jurisdiction if they create a substantial connection with the state, provided the nature, quality and circumstances of the act's commission establish more than a mere attenuated affiliation with the state. *See Burger King v. Rudzewicz,* 471 U.S. 462, 475 n. 18, 105 S.Ct. 2174, 2184 n. 18, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *International Shoe,* 326 U.S. at 318, 66 S.Ct. at 159.

■ Since the issue of "minimum contacts" is fact specific, the Court conducted a hearing pursuant to Fed.R.Civ.P. 43(e).[6] At the hearing, Bates testified that approximately one year before the accident he purchased the allegedly defective automobile for his wife to use in Pennsylvania, where she was permanently residing with their four children. She moved to Pennsylvania approximately three years before the accident, after her mother died. Prior to her death, Bates' mother-in-law was caring for the children at her home in Pennsylvania because Bates and his wife were having financial difficulties. Although Bates occasionally visited his family in Pennsylvania, he maintained a separate residence in New York because of employment obligations. Bates further testified that his son also used the automobile in Pennsylvania; that he gave his son express permission to drive the vehicle in Pennsylvania; and, although he did not specifically give him such permission on the date of the accident, it was understood that his

---

6. Rule 43(e) provides: "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition." The Second Circuit has stated that "Rule 43(e) can be used to hear motions for summary judgment." *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 42 n. 2 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987).

son could use the automobile in Pennsylvania at any time Bates' wife did not need to use it.

In light of Bates' testimony, which withstood cross-examination, the Court finds that it would have been "reasonable and fair," *Kulko,* 436 U.S. at 92, 98 S.Ct. at 1697, to require Bates to conduct his defense in Pennsylvania had plaintiffs initiated this action in that state. The entrusting of the allegedly defective vehicle by Bates to his son with knowledge that the vehicle would be used extensively in Pennsylvania was sufficient to satisfy the constitutional "minimum contacts" requirement. *See Tavoularis v. Womer,* 123 N.H. 423, 462 A.2d 110, 113–14 (1983) ("[I]t was reasonably foreseeable that the defendant would be sued in New Hampshire for negligently entrusting an automobile to [his friend]."). Therefore, plaintiffs cannot avail themselves of New York's three-year statute of limitations.

■ Where, as here, New York's borrowing statute requires application of another state's statute of limitations, that state's tolling and other related provisions will also be applied as a matter of New York law. *See Antone v. General Motors Corp.,* 64 N.Y.2d 20, 31, 484 N.Y.S.2d 514, 519, 473 N.E.2d 742, 747 (1984) ("in 'borrowing' a statute of limitations of another State, a New York court will also 'borrow' the other State's rules as to tolling"); *In re Agent Orange Prod. Liab. Litig.,* 597 F.Supp. 740, 801 (E.D.N.Y.1984) ("Where [the borrowing statute] causes another state's statute to be borrowed, that state's statute and the interpretations given its tolling and other provisions will be applied as a total package."), *aff'd,* 818 F.2d 145 (2d Cir.1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Since Pennsylvania's two-year statute of limitations applies, the Court must, accordingly, resolve the clash between Pennsylvania's 90–day ser-

vice rule and the Federal Rules' 120–day service provision.

**B. *The Applicable Service Rule***

Resolution of this issue turns on the application of the fundamental principles of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), as contrasted and explained by the Supreme Court in *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). In *Walker,* the Court aptly noted that "[t]he question whether state or federal law should apply on various issues arising in an action based on state law which has been brought in federal court under diversity of citizenship jurisdiction has troubled this Court for many years." *Id.* at 744, 100 S.Ct. at 1982.

*Walker* entailed a personal-injury diversity action brought in Oklahoma federal court by an Oklahoma resident who was injured in that state. Under Oklahoma's statutes, an action was not deemed to be commenced for the purpose of the statute of limitations until the defendant was served with a summons. If, however, the complaint was filed within the limitations period, the action was deemed to have commenced from the date of filing provided the defendant was served within 60 days thereafter, even though service occurred outside the limitations period. Although the complaint had indeed been filed within the two-year statute of limitations, service was not effectuated until long after this two-year period and the 60–day service period had both expired.[7] Walker argued that federal law governed for all purposes, including the tolling of the state statute of limitations, even though he conceded that his action would be barred in Oklahoma's state courts. Therefore, since Walker commenced his lawsuit within the two-year statute of

---

7. At the time of *Walker* there was no federal rule governing the time for service of process since the 120–day time requirement, presently contained in Fed.R.Civ.P. 4(m), was not enacted until 1983. Prior thereto, a plaintiff was only under a duty "to use due diligence in securing the issuance and service of the summons." *Sylvestri v. Warner & Swasey Co.,* 398 F.2d 598, 606 (2d Cir.1968). The courts exercised their discre-

tion in determining whether to dismiss a complaint because of delays in service. See 4A CHARLES A. WRIGHT & ARTHUR R. MILLER FEDERAL PRACTICE AND PROCEDURE § 1137 (1987) ("[the due diligence standard] led courts to overlook many delays in service of a summons and complaint and to ask instead whether service still could be made").

limitations by filing under Fed.R.Civ.P. 3, he contended that his suit was not time-barred.

Rejecting this contention, the Supreme Court revisited *Erie* and *Hanna,* and explained:

1. *Erie,* which did not involve any federal rule, was not the appropriate test of the validity and applicability of the Federal Rules of Civil Procedure. To the contrary, while stating that "the law to be applied in any [diversity] case is the law of the State," *Walker,* 446 U.S. at 745, 100 S.Ct. at 1983 (*quoting Erie,* 304 U.S. at 78, 58 S.Ct. 817, 82 L.Ed. 1188), the Supreme Court in *Erie* expressly cautioned that the law of the state would not apply " 'in matters governed by the Federal Constitution or by Acts of Congress.' " *Id.*

2. In determining whether a matter is governed by a Federal Rule of Civil Procedure, the initial inquiry is whether the rule is "sufficiently broad to control the issue before the Court." *Walker,* 446 U.S. at 749–50, 100 S.Ct. at 1984.[8] If so, the rule governs unless the court determines that it is invalid because it transgresses the Constitution or the Rules Enabling Act.[9]

3. If the federal rule is not sufficiently broad to cover the point in dispute or is invalid, then " '*Erie* command[s] the enforce-

ment of state law.' " *Id.* at 750, 100 S.Ct. at 1984 (*quoting Hanna,* 380 U.S. at 470, 85 S.Ct. at 1143).

The *Walker* Court held that Fed.R.Civ.P. 3 "does not affect state statutes of limitations" but simply "governs the date from which various timing requirements of the Federal Rules begin to run." *Id.* at 751, 100 S.Ct. at 1985.[10] Since there was no federal rule in conflict with or displacing state tolling statutes, the Court looked to Oklahoma law, requiring service of process to toll the statute of limitations, and concluded, therefore, that Oklahoma's service requirements were "an integral part of the state statute of limitations." *Id.* at 752, 100 S.Ct. at 1986.[11] Accordingly, the Supreme Court held that the lawsuit was time-barred, commenting: "There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants." *Id.* at 753, 100 S.Ct. at 1986. *See also Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949) (reaching the same result on comparable

---

8. As the Supreme Court subsequently stated in *Burlington Northern R.R. v. Woods,* 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987): "The initial step is to determine whether, when fairly construed, the scope of [the Federal Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Id.* at 4–5, (*quoting Walker,* 446 U.S. at 749–50, and n. 9, 100 S.Ct. at 1984, and n. 9); *Hanna,* 380 U.S. at 471–72, 85 S.Ct. at 1144.

9. The Rules Enabling Act, 28 U.S.C. § 2072, authorizes the Supreme Court to "prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts ... and courts of appeals," but provides that such rules "shall not abridge, enlarge or modify any substantive right." *See Willy v. Coastal Corp.,* 503 U.S. 131, 134, 112 S.Ct. 1076, 1078, 117 L.Ed.2d 280 (1991). To determine whether a rule comports with the Rules Enabling Act "[t]he test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them."

*Sibbach v. Wilson & Co.,* 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941). However, "Rules which incidentally affect litigants' substantive rights do not violate this provision if reasonably necessary to maintain the integrity of that system of rules." *Burlington Northern R.R.,* 480 U.S. at 5, 107 S.Ct. at 970. *See also Hanna,* 380 U.S. at 464, 85 S.Ct. at 1140.

10. One example of such a timing requirement in effect at the time of *Walker* is Fed.R.Civ.P. 56(a), which precludes a party from moving for summary judgment before the expiration of 20 days from the time an action is commenced.

11. If a Federal Rule had been enacted governing the tolling of state statutes of limitations, its validity would undoubtedly be gravely in doubt under the Rules Enabling Act. *See, e.g., Morse v. Elmira Country Club,* 752 F.2d 35, 42 (2d Cir. 1984) (commenting that plaintiff's argument that the Federal Rule's 120–day service rule effectively added 120 days to the state statute of limitations was "a dubious proposition at best in light of *Walker* ").

facts prior to *Hanna* and the more searching analysis of *Walker*).

By contrast, in *Hanna*, where the Supreme Court was confronted for the first time with a case where the applicable Federal Rule was in direct collision with a state law, the Court sanctioned service of process upon the defendant's wife at his home, as permitted under Fed.R.Civ.P. 4(b), and did not require personal service upon the defendant as called for by a Massachusetts statute. *Hanna* exemplifies that scenario, therefore, where the Federal Rule: (1) was sufficiently broad to cover the issue, and (2) did not affront either the Enabling Act or the Constitution since it resulted "only in altering the way in which process was served" and did not alter "the mode of enforcement of state-created rights in a fashion sufficiently 'substantial' to raise the sort of equal protection problems to which the *Erie* opinion alluded." *Hanna*, 380 U.S. at 469, 85 S.Ct. at 1143.

Since *Walker*, which "laid to rest the notion that Rule 3 can ever be used to toll a state statute of limitations in a diversity case arising under state law," *Converse v. General Motors Corp.*, 893 F.2d 513, 516 (2d Cir.1990) (*quoting Fischer v. Iowa Mold Tooling Co.*, 690 F.2d 155, 157 (8th Cir.1982)), the Second Circuit has had just a few occasions to grapple with the *Walker–Hanna* dichotomy. Where service of process was considered by the state to be an integral part of its statute of limitations, the state rule was applied. *See Diffley v. Allied–Signal, Inc.*, 921 F.2d 421 (2d Cir.1990) (applying New York State statute to extend the one-year "window" for revived claims); *Converse*, 893 F.2d 513 (applying Connecticut law requiring actual service to commence an action); *Personis v. Oiler*, 889 F.2d 424 (2d Cir.1989) (applying New York State statute authorizing delivery of process to the sheriff to obtain a 60–day extension of the statute of limitations).

Where the issue, however, did not center on the integrality of the state's service-of-process rule and its statute of limitations, but on the method of making service or whether service had been made, the federal rules were held to govern over competing state rules. *See Datskow v. Teledyne, Inc., Continental Products Division*, 899 F.2d 1298 (2d Cir.) (holding delivery of process to federal district court clerk the effective equivalent of delivery to state counterpart under New York State statute), *cert. denied*, 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 116 (1990); *Morse v. Elmira Country Club*, 752 F.2d 35 (2d Cir.1984) (holding that a party may effectuate service by using the federal rule sanctioning service by mail).

In the present case, in order to determine the appropriate reach of New York's borrowing statute and the interplay of the Federal Rules' 120–day service provision, the Court must, accordingly, determine "what events serve to commence an action and to toll the statute of limitations" under Pennsylvania law. *Personis*, 889 F.2d at 426; *see also Diffley*, 921 F.2d at 423.

Unlike states such as Oklahoma (*Walker*), Kansas (*Ragan*) and Connecticut (*Converse*), requiring service of process to toll the statute of limitations, in Pennsylvania it is the commencement of the litigation by filing with the prothonotary either a complaint or a praecipe for a writ of summons, pursuant to Pa.R.Civ.P. 1007,[12] which is "sufficient to toll the running of the statute of limitations." *See Lamp v. Heyman*, 469 Pa. 465, 366 A.2d 882, 885 (1976). Indeed, as noted by Pennsylvania's high court in *Lamp*, "the underlying purpose [of Rule 1007] has been to provide certainty as to the commencement of an action and to remove a subsequent failure to effect service from consideration in determining whether the statute of limitations has been tolled." *Id.* 366 A.2d at 886.

12. The Court need not, of course, be concerned about whether the filing procedures for commencing a lawsuit under Pennsylvania law need to be followed. Such matters are classic examples where federal rules must *per force* clash with state rules lest a plaintiff be required to bring his lawsuit in both the state and federal court.

Thus, "the forms and mode of enforcing [a plaintiff's] right may at times, naturally enough, vary because the two judicial systems are not identic," *York*, 326 U.S. at 108, 65 S.Ct. at 1469, and accordingly the Federal Rule would always control in such circumstances.

Prior to *Lamp,* service of process could be delayed for an indeterminate period of time by the simple ministerial expedient of the reinstatement of the complaint or reissuance of the writ of summons "at any time after the original issuance during a period equivalent to that permitted by the applicable statute of limitations for the commencement of the action." *Id.* 366 A.2d at 885.[13] Moreover, "each valid reissuance g[ave] rise to a new equivalent period during which the writ may again be reissued." *Id.* Thus, it was common practice in Pennsylvania "for attorneys to file a praecipe with the prothonotary to toll the statute of limitations but then, whether because settlement negotiations [were] in progress or because more time [was] needed to prepare the case, to delay or prevent service upon the defendant." *Id.* 366 A.2d at 886. Significantly, "the remedy for a defendant prejudiced by the plaintiff's abuse of the rule was not in the statute of limitations, but in the non-pros doctrine" for unreasonably delaying the prosecution. *Id.* 366 A.2d at 887.

In *Lamp,* the court decided to place limitations on this practice because it believed that "there is too much potential for abuse in a rule which permits a plaintiff to keep an action alive without proper notice to a defendant merely by filing a praecipe for a writ of summons and then having the writ reissued in a timely fashion without attempting to effectuate service." *Id.* 366 A.2d at 888. Accordingly, it held that henceforth "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Id.* 366 A.2d at 889.

In *Patterson v. American Bosch Corp.,* 914 F.2d 384 (3d Cir.1990), the Third Circuit collated all of the reported cases in which *Lamp* was applied to "nullify the tolling effect of the filing of a praecipe or a complaint"

and found that nullification almost always occurred only because of the "plaintiffs' failure to comply with the procedure or local practice for service of process." *Id.* at 391. As referenced therein, these failures included such matters as the failure to provide service instructions or pay service fees. Therefore, the court reasoned that *Lamp* did not impose a broad service of process obligation:

> In our view, the *Lamp* rule is satisfied once the plaintiff has complied in good faith with the procedural requirements and local practice for the issuance and service of a writ of summons. As long as the plaintiff files a praecipe for reissuance of the writ within the 'equivalent period,' we do not believe that *Lamp* dictates an additional affirmative duty to pursue service of process if the initial good-faith service attempt is unsuccessful.

*Id.*

Thus, the Third Circuit in *Patterson* sanctioned a delay in service years after the original filing of the praecipe for a writ of summons and well after the expiration of the statute of limitations since there was "no allegation that the plaintiffs impeded the service of the writs once they were issued, or engaged in any other affirmative conduct designed to stall the legal machinery." *Id.* Furthermore, it reiterated the traditional rule, articulated in *Lamp,* that the remedy for any prejudice caused by the passage of such a prolonged period of time under Pennsylvania's liberal service rules "was not in the statute of limitations, but in the non-pros doctrine." *Id.* at 390 (*quoting Lamp,* 366 A.2d at 886–87).

It is clear, therefore, that subject to the good-faith qualification of *Lamp,* an action in Pennsylvania "is not dead merely because the complaint has not been [timely] served . . . ." *People, Property Owners and Citizens of the Pleasant Valley Sch. Dist. v. Burney,* 151 Pa.Cmwth. 124, 616 A.2d 177,

---

**13.** Although *Lamp* involved an action commenced by filing a praecipe for a writ of summons, the decision "applies with equal force to cases instituted by filing a complaint." *Pannill*

*v. Seahorne,* 278 Pa.Super. 562, 420 A.2d 684, 687 (Pa.Super.Ct.1980). *See* Pa.R.Civ.P. 401(b) (providing for the reinstatement of a complaint where service is not timely effected).

179 (1992). "All that is required to extend the time for service is to reinstate the complaint before service is again attempted," which can be done "at any time or any number of times after the original issuance during a period equivalent to that permitted by the applicable statute of limitations for the underlying action." *Id.* *See also Fox v. Thompson,* 377 Pa.Super. 39, 546 A.2d 1146 (1988); *Sherry v. Trexler–Haines Gas, Inc.,* 373 Pa.Super. 330, 541 A.2d 341 (1988). Furthermore, "[a] thorough review of cases in which non pros has been entered shows that it is generally entered after long periods of dormancy or lengthy inactivity after the initiation of an action." *Burney,* 616 A.2d at 179.

While the Pennsylvania Supreme Court has not addressed the issue of whether Pennsylvania's service-of-process rules are integral to the tolling of its statutes of limitations, there is little doubt in light of *Lamp* and its progeny that if the issue was presented to that court it would rule that they are not integral. Clearly, service does not commence an action in Pennsylvania; nor is the commencement of an action conditional upon service. Rather, its principal function is to notify the defendant that an action has been commenced and to subject the defendant to the jurisdiction of the court. These are precisely the same functions served by Fed. R.Civ.P. 4(m). Therefore, under *Hanna* analysis, Rule 4(m) is here controlling since it is sufficiently broad to cover the issue of the timeliness for service of process and does not violate the Constitution or the Enabling Act. *See Stinson v. Kaiser Gypsum Co.,* 972 F.2d 59, 62 (3d Cir.1992) ("Clearly the district court has been correct throughout in applying the *time schedule* for service found in Rule 4(j) [now 4(m)] rather than the *time schedule* for service found in [Pennsylvania's rules of procedure]. When a state rule that would otherwise be applicable in a diversity case conflicts with a federal rule of civil procedure that is authorized by the Enabling Act, a district court is required to follow the federal rule.") (emphasis added).

There remains the issue of whether the good-faith qualification of *Lamp* has any separate vitality because "a course of conduct which serves to stall in its tracks" the service of process under *Lamp* is an event which would nullify the commencement of an action in Pennsylvania. Since there is no federal counterpart to this state requirement, Pennsylvania law must govern. Defendant, however, has not adduced any evidence of plaintiffs' bad faith under the *Lamp* standard. To the contrary, at the hearing before the Court it was established that plaintiffs retained a process server on May 5, 1993, just 36 days after the complaint was filed, and instructed him to effect service upon defendant. The process server first attempted service on May 15, 1993, 46 days after the complaint was filed. He was unsuccessful, however, because the police report that was prepared at the time of the accident listed only a post office box as Bates' address and the post office refused the process server's request for Bates' permanent address. On July 2, 1993, after the post office denied a second request, the process server obtained the address by searching the Board of Elections records at the Nassau County Courthouse and, that same day, attempted to personally serve Bates at that address. Service was not effected on that date because no one was at the residence. Service was ultimately made 11 days later. Clearly, these facts comport with *Lamp's* good-faith requirement.[14]

14. It should be noted that if plaintiffs had sued in Pennsylvania they would undoubtedly have reinstated their complaint before effecting service 105 days after the initial commencement of the action. Obviously, plaintiffs could not have reinstated their federal complaint in Pennsylvania state court. In any event, the reinstatement by the prothonotary "is effected by a ministerial act; the plaintiff is entitled to it as a matter of right." *Stinson,* 972 F.2d at 63. There would be no reason to require plaintiffs to comply with ministerial state rules that do not have substantive significance: "The federal litigant need not rely upon the services of a state official where, as here, he does not seek greater substantive rights

## III.

### *CONCLUSION*

Accordingly, the motion is denied.[15]

**SO ORDERED.**

than he would enjoy in state court." *Gold v. Jeep Corp.*, 579 F.Supp. 256, 259 (E.D.N.Y.1984).

15. Plaintiffs' cross-motion for sanctions and attorneys' fees also is denied.