INSURANCE COMPANY OF NORTH AMERICA and Fidelity Casualty Insurance Company of New York, as subrogees of AES Placerita, Inc., Plaintiffs,

v.

ABB POWER GENERATION, INC., Defendant.

No. 95 Civ. 0406(LAK).

United States District Court, Southern District of New York.

May 20, 1996.

As Amended May 21, 1996.

Thomas J. Skeffington, Robert A. Stern, Clausen Miller, New York City, for Plaintiffs.

Stuart I. Parker, Kennard M. Goodman, Pollack & Greene, New York City, for Defendant.

### MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiffs commenced this action in New York Supreme Court, New York County, seeking (1) a declaratory judgment that their claims under a contract between their subrogor and defendant are not barred by applicable statutes of limitations, and (2) an order compelling arbitration of their claims. De-fendant removed the case to this Court on the ground that the parties are of diverse citizenship and has counterclaimed for a declaration that (1) plaintiffs' contract claims are barred by the applicable statutes of limitations, (2) plaintiffs' tort claims are not arbitrable, and (3) defendant therefore may not be compelled to submit to arbitration.

### Facts

On September 13, 1985, AES Placerita, Inc. ("AES") and defendant BBC Brown Boveri, Inc. ("BBC")[1] entered into a contract under which defendant agreed to construct a cogeneration facility. The facility, located in Newhall, California, was intended to produce steam to be sold to the operator of an adjacent oil field for use in recovering oil and to generate electricity for sale to Southern California Edison. Defendant in fact designed and constructed the facility and procured necessary equipment. By the end of August 1988, defendant had tested the facility's performance and concluded that it met the contractual performance specifications. On September 9, 1988, AES acknowledged final acceptance of the plant.

On January 9, 1991, a steam turbine at the facility suffered what the parties describe as a "catastrophic breakdown" while in service. The turbine was badly damaged and the facility was put out of service until June 1991. The cause of the breakdown is disputed. It may have been the result of defects in the turbine, defects in the computerized system which controlled the turbine, errors by the personnel operating the facility, or negligence of personnel who serviced the turbine.

AES filed a claim with its insurers, plaintiffs Insurance Company of North America and Fidelity Casualty Insurance Company of New York, for the cost of repairing the turbine and for the business lost as a result of the interruption in service. Plaintiffs paid AES in excess of $5.5 million and, on December 16, 1992, asserted claims against defendant both in contract and in tort as AES's subrogees. In the event that defendant refused to pay their claim, plaintiffs demanded

---

1. Defendant ABB Power Generation, Inc. is BBC's successor in interest for purposes of this action. *See* Am.Order for Trial to the Ct., Sched.

B ¶ 4. BBC and ABB Power Generation, Inc. are referred to without distinction as "defendant."

arbitration under the contract between AES and defendant. Plaintiffs and defendant agreed to attempt to resolve the matter between themselves before resorting to arbitration. As part of that effort, they agreed to toll any and all statutes of limitations applicable to plaintiffs' claims as of December 16, 1992. In December 1994, having concluded that efforts to resolve the dispute had failed, plaintiffs filed this action in New York Supreme Court to compel arbitration.

The arbitration clause that plaintiffs seek to enforce reads, in relevant part, as follows:

"34.0 *DISPUTE RESOLUTION*

"34.1 *Agreement to Binding Arbitration.* All disputes between the parties hereto shall be resolved in accordance with the provisions of this Article 34.0, by an arbitration panel ... except that the Panel shall have no authority to act upon a claim if the party claimed against could successfully assert the statute of limitations as a bar to such claim if a law suit were brought on it. The panel shall weigh all evidence presented at the arbitration and shall issue its decision based upon that evidence."

\* \* \* \* \* \*

"34.9 *Applicable Law.* The foregoing agreement to arbitrate and any other agreement to arbitrate with an additional person in connection with the Project shall be specifically enforceable under the prevailing arbitration laws of the State of New York." (Stipulated Trial Exhibit 1, Art. 34.0)[2]

Elsewhere, the contract provides:

"29.0 *GOVERNING LAW*

As to any question involving the legal effect of this contract or its construction or interpretation, the law of the State of California shall apply." (*Id.*, Art. 29)

**2.** Hereinafter Stipulated Trial Exhibits are referred to as "STX."

**3.** Plaintiffs contend that the Court is to determine only what the applicable statutes of limitations are, leaving their application to the arbitrators. Defendants argue that the Court should both select and enforce the appropriate statutes of limitations. Plaintiffs cite no authority for their novel approach, which seems to invite the Court to issue an advisory opinion. When New

In light of these contractual provisions, the parties contest whether the Court or the arbitration panel is to decide statutes of limitations questions,[3] whether New York's or California's statutes of limitations are applicable, which statutes under California law, if any, are applicable, and the outcome of application of those statutes. Defendant contends also that it is not obliged to arbitrate tort claims advanced by plaintiffs.

The parties agreed to a trial on a stipulated record consisting of certain stipulations of fact as well as other evidence. They have consented to the Court making findings of fact from this record. This is the Court's decision after trial.

### Discussion

*Arbitrability of the Statutes of Limitations Questions*

In resolving the question whether the Court or the arbitration panel is to decide the limitations questions, in light of the contractual choice of law clause selecting New York arbitration law, the Court must consider several principles. Since the contract evidences a transaction involving interstate commerce, the Federal Arbitration Act (the "FAA") applies, notwithstanding the parties' selection of New York law. *See PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1197 (2d Cir.1996). The parties may contract to apply state arbitration law, but the FAA declares a "national policy favoring arbitration" and preempts any state law provision that would "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, —— – ——, 115 S.Ct. 1212, 1215–16, 131 L.Ed.2d 76 (1995) (citing *Southland Corp. v. Keating,* 465 U.S. 1, 10,

York courts apply statutes of limitations to claims subject to arbitration, they in fact apply the statutes rather than merely advising the arbitrators as to the applicable law. *See, e.g., Kidder, Peabody & Co., Inc. v. McArtor,* —— A.D.2d ——, 637 N.Y.S.2d 99, 100 (1st Dept.1996) (affirming dismissal of claims as time-barred prior to arbitration). Accordingly, the Court will determine whether the claims are time-barred.

104 S.Ct. 852, 858, 79 L.Ed.2d 1 (1984)). This is consistent with the policy of the FAA that arbitration agreements, like all contracts, are to be enforced to give effect to the parties' intent. *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989).

 In deciding whether the parties contracted to arbitrate the limitations questions, the Court will interpret the contract according to state law governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, — U.S. —, —, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). The Court must add to the usual rules of construction, however, the principle that the FAA requires any ambiguity regarding the scope of arbitrable issues under the contract to be resolved in favor of arbitration where there is a valid agreement to arbitrate. *Id.; Bybyk*, 81 F.3d at 1198.[4]

 This case turns on interpretation of language contained in Article 34, the arbitration provision of the parties' contract, excepting from the scope of the arbitrators' authority any claim against which a party "could successfully assert the statute of limitations as a bar ... if a law suit were brought on it." The Court's task is to determine whether the parties intended by this language to reserve decision of statutes of limitations questions for the courts.

 Under New York law, chosen by the parties to govern enforcement of the arbitration provisions of their contract, statutes of limitations questions are resolved by the courts. *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 623 N.Y.S.2d 800, 647 N.E.2d 1308, *cert. denied*, — U.S. —, 116 S.Ct. 59, 133 L.Ed.2d 23 (1995). In light of substantive law under the FAA in this Circuit to the effect that timeliness is for the arbitrators rather than the court,[5] however,

the state law which the parties have selected might not, in itself, be regarded as determinative of the question whether the parties intended that courts resolve the statutes of limitations questions. *See, e.g., Bybyk*, 81 F.3d at 1200 (holding that New York choice of law clause did not bar arbitration of timeliness issues). In this case, however, the agreement has the unusual feature of selecting New York law specifically to govern enforcement of the arbitration clause, distinct from the choice of law clause that governs the substance of the contract. *Cf. Mastrobuono*, — U.S. —, —, 115 S.Ct. 1212, 1219 (holding that where contract contained New York choice of law clause, but indicated that arbitration was to be conducted according to rules of NASD, scope of arbitrators' authority was determined by NASD rules rather than New York law). More importantly, the arbitration clause itself states that the arbitrators have no authority to act on claims that would be barred by the applicable statutes of limitations. While this is not quite the same as saying that the statutes of limitations questions are to be resolved by the courts, the Court is at a loss to imagine what else this exception to the authority of the arbitrators could mean. Nor have the parties offered any plausible alternative suggestion.[6] Thus, the choice of New York law strongly supports the view that the parties intended the courts to determine issues of timeliness.

 This conclusion drawn from the face of the arbitration agreement is further supported by applying standard rules of construction, as instructed by *First Options*. — U.S. at —, 115 S.Ct. at 1924. Interpreting the parties' arbitration agreement to mean that arbitrators rather than courts are to decide statutes of limitations questions would render the limitation on the arbitrators' power provided for in the con-

---

**4.** This is not a case, however, as was *First Options*, in which there is a dispute regarding whether there is an agreement to arbitrate. In such cases, the presumption is reversed, and courts resolve ambiguities against finding the existence of an agreement to arbitrate. *First Options*, — U.S. at —, 115 S.Ct. at 1924. This, instead, is a case in which the parties "provide[d] for arbitration of some issues." In

consequence, "the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter." *Id.*

**5.** *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir.1991).

**6.** *See supra* n. 3.

tract ineffectual. It is a commonplace that a court will interpret a contract to give effect to all of its provisions, and will avoid an interpretation that leaves part of the contract meaningless. *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017 (2d Cir.1985); *Two Guys from Harrison–N.Y., Inc. v. S.F.R. Realty Associates*, 63 N.Y.2d 396, 482 N.Y.S.2d 465, 472 N.E.2d 315 (1984). In this case, where no reasonable alternative interpretation of the contract is possible, there is no ambiguity to resolve in favor of arbitration. The Court holds, therefore, that the parties intended that the question whether claims under their contract were barred by statutes of limitations is for the courts.[7]

*Applicability of New York or California Statutes of Limitations*

 Plaintiffs urge the Court to apply New York's statutes of limitations, while defendants argue that California's statutes of limitations apply either pursuant to the choice of law clause contained in the body of the contract or by operation of New York's borrowing statute. N.Y. CPLR § 202 (McKinney 1990).

 Faced with a choice between different applicable state laws, a federal court sitting in diversity applies the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Stafford v. International Harvester Co.*, 668 F.2d 142, 147 (2d Cir.1981). Under New York law, New York courts ordinarily apply New York's statutes of limitations even though the injury which gave rise to the action occurred in another state. *Stafford*, 668 F.2d at 147; *Martin v. Julius Dierck Equipment Co.*, 43 N.Y.2d 583, 588, 403 N.Y.S.2d 185, 187, 374 N.E.2d 97 (1978). Nor does the fact that this dispute arises in the context of a petition to compel arbitration change the result. Where a New York court is determining the timeliness of a claim on which arbitration is demanded, the court ap-

plies the same statute of limitations to that claim as it would if suit were brought on it in that court. *Sears, Roebuck & Co. v. Enco Associates, Inc.*, 43 N.Y.2d 389, 394, 401 N.Y.S.2d 767, 770, 372 N.E.2d 555 (1977).

The rationale that supports application of the forum state's statute of limitations, regardless of the place of injury, is that such statutes are regarded as part of the forum's procedure, as distinguished from the substance of the right created by the law of the state where the injury occurred. It is regarded as "an unreasonable burden on the judicial machinery of the forum" to require it to apply the procedural law of another court. *Bournias v. Atlantic Maritime Co., Ltd.*, 220 F.2d 152, 154 (2d Cir.1955) (Harlan, J.); *see also Federal Deposit Insurance Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir.1985); *Des Brisay v. Goldfield Corp.*, 637 F.2d 680, 682 (9th Cir.1981); *Clarke v. Pennsylvania R.R. Co.*, 341 F.2d 430, 432 (2d Cir.1965); Restatement (Second) Conflict of Laws § 122, cmt. a (1971).

 Relying on this characterization of statutes of limitations as procedural, New York courts do not apply contractual choice of law clauses when determining what statute of limitations applies. *See Bank of Boston Int'l of Miami v. Arguello Tefel*, 626 F.Supp. 314, 316 (E.D.N.Y.1986). Under New York law, a choice of law clause is construed as choosing only the applicable substantive law. *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir.1987); *Gambar Enterprises, Inc. v. Kelly Services, Inc.*, 69 A.D.2d 297, 304, 418 N.Y.S.2d 818, 822 (4th Dept.1979). In this case, therefore, the presence of Article 27, selecting California law to govern the contract, does not mean that California's statutes of limitations are applicable. *See Sears, Roebuck & Co. v. Enco Associates, Inc.*, 43 N.Y.2d at 397, 401 N.Y.S.2d 767, 772, 372 N.E.2d 555, 559.

 There remains the contention that the New York borrowing statute, N.Y. CPLR § 202, requires application of California's

---

7. Where the contract is unambiguous, its interpretation is a matter of law for the Court. *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990); *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 462, 435

N.E.2d 1075 (1982). Even assuming *arguendo* that this contract were ambiguous, the Court finds as a fact that the parties intended limitations issues to be decided by the courts.

statutes of limitations to this dispute. Section 202 reads, in its entirety:

> "An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply." *Id.*

None of the parties is a New York resident. (*See* Am. Ord. for Tr. to the Court, Sched. B ¶¶ 1–3) The statute therefore would seem applicable, requiring that the action be timely both under New York law and under the law of the place where the cause of action accrued.[8] The borrowing statute, however, is not applied without reference to its underlying purposes. *See Stafford,* 668 F.2d at 151–52. The purpose of the borrowing statute is to prevent plaintiffs from shopping for a forum with a limitations period long enough to allow an action to proceed, denying resident defendants the benefit of the shortest applicable limitations period. *See id.; Antone v. General Motors Corp.,* 64 N.Y.2d 20, 484 N.Y.S.2d 514, 473 N.E.2d 742 (1984).

▮▮▮▮▮ This rationale, and therefore the statute itself, is not applicable where, as here, the plaintiff could not have brought suit in the jurisdiction in which the action accrued. *Stafford,* 668 F.2d at 151–52; *Hart v. Bates,* 897 F.Supp. 710, 712–13 (E.D.N.Y. 1995); *Rescildo v. R.H. Macy's,* 187 A.D.2d 112, 116, 594 N.Y.S.2d 139, 141 (1st Dept. 1993). While *Stafford* concerned a situation in which the defendant was not amenable to suit because it was not subject to personal jurisdiction, its rationale applies with equal force in this case. The parties' arbitration agreement prevents plaintiffs from bringing

suit on the contract in California, as it explicitly provides that "venue ... of any court proceeding to interpret or enforce the provisions of this Article 34.0 [the arbitration agreement] shall be in New York City, New York." (STX 1, Art. 34.10) In consequence, the parties could not have litigated arbitrability in California absent a waiver of the contractual choice of forum.[9] Hence, application of the borrowing statute is not necessary to prevent forum shopping.[10] In these circumstances, the New York borrowing statute is inapplicable. The Court therefore will apply New York's statutes of limitations.

### Application of the Statutes of Limitations

Plaintiffs assert tort claims, breach of contract claims, and a claim for breach of warranty. The breach of contract claims stem from defendant's alleged failure adequately to supervise the construction of the facility or the procurement of equipment therefor and from defendant's alleged breach of a provision of the contract obligating it to repair or replace defects during a one year period. The breach of warranty claim stems from the facility's failure, as a result of the breakdown of the steam turbine, to perform according to specifications allegedly provided in the contract. Plaintiffs' tort claims are based on alleged negligence by defendant resulting in damage to plaintiff's real property, i.e. the facility, and strict liability for defendant's alleged sale to plaintiff of defective products. The Court expresses no opinion on the merits of any of these claims.

▮▮▮▮▮ The first question that must be answered with regard to plaintiffs' breach of contract claims is whether the contract was a service contract or a contract for the sale of goods. Service contracts, including construction contracts, are governed by N.Y. CPLR

---

**8.** The Court notes that there long have been disputes about the proper determination of the place where a cause of action for breach of contract accrues. The Court's conclusion, however, makes that determination unnecessary in this case.

**9.** Reasonable choice of forum and choice of venue clauses are enforceable under federal law and under the laws of California and New York. *See Jones v. Weibrecht,* 901 F.2d 17, 18, 19 n. 1 (2d Cir.1990); *Smith, Valentino & Smith, Inc. v. Su-*

*perior Court of Los Angeles County,* 17 Cal.3d 491, 495–96, 131 Cal.Rptr. 374, 377, 551 P.2d 1206, 1209 (1976); *British West Indies Guaranty Trust Co., Ltd. v. Banque Internationale A Luxembourg,* 172 A.D.2d 234, 567 N.Y.S.2d 731 (1st Dept.1991).

**10.** Nor is defendant a New York resident, on behalf of whom New York might have intended to secure the benefit of a shorter limitations period. *See Stafford,* 668 F.2d at 151–52.

§ 213 (McKinney 1990), under which there is a six year proscriptive period. Contracts for the sale of goods are governed by N.Y. UCC § 2–725(2) (McKinney 1993), which imposes a four year limitation. Where a contract involves the sale of both services and goods, the Court looks to the main purpose of the contract in order to determine the applicable statute of limitations. *Dynamics Corp. of America v. International Harvester Co.*, 429 F.Supp. 341, 346 (S.D.N.Y.1977) (holding that contract for sale of truck manufacturing facility was not contract for sale of goods); *Ben Construction Corp. v. Ventre*, 23 A.D.2d 44, 45, 257 N.Y.S.2d 988, 989 (4th Dept.1965) (same, contract for construction and installation of swimming pool).

The contract in this case defines defendant's undertaking as "services," and lists the services as follows:

"Contractor shall perform, or cause to be performed, the work and services, and shall procure, or cause to be procured, the equipment and material necessary to design, procure, construct, startup, test, performance test and complete the Project in conformity with the Contract Documents.... Contractor shall provide all services, equipment and materials necessary to provide Placerita with a Project that functions ..." (STX 1, Art. 3.1)

In addition, defendant was to provide extensive engineering services (STX 1, Art. 3.2) and was to supply, "whether by producing itself or by procuring from others," any necessary equipment. Thus AES contracted to have defendant build and deliver to it a working power generation plant. The contract therefore is governed by N.Y. CPLR § 213.

■ Under New York law, claims for breach of construction contracts accrue upon substantial completion. *645 First Ave. Manhattan Co. v. Silhouette Drywall Systems, Inc.*, 212 A.D.2d 394, 622 N.Y.S.2d 46 (1st Dept.1995). Actions for breach of such contracts are timely if they are brought within six years of accrual. *Id.*; N.Y. CPLR § 213 (McKinney 1990). The parties agree that substantial completion occurred when AES took possession of the facility in September, 1988. Plaintiffs demanded arbitration on De-

cember 16, 1992. Their breach of contract claims therefore are timely under N.Y. CPLR § 213.

■ Plaintiffs allege also a breach of warranty of future performance. Essentially, plaintiffs contend that Article 10.9.2 of the contract, which guaranteed that the facility would be capable of producing steam and electricity, amounted to a warranty that the facility would remain capable of producing steam and electricity for an indefinite, but reasonable, time. In light of disclaimers appearing in Section 10.9.3, defendant disputes the existence of such a warranty under the contract. Such arguments regarding the construction of the contract, however, have been entrusted by the parties to the arbitrators. Assuming, solely for the purpose of assessing its timeliness, that plaintiffs have a warranty claim, it is timely under either N.Y. CPLR § 213 or N.Y. UCC § 2–725(2).

■ Defendant contends that the warranty claim, if any, ought to be governed by the statute for the sale of goods. *See Brown v. Neff*, 159 Misc.2d 186, 603 N.Y.S.2d 707, 709 (Sup.Ct. Tompkins County 1993). For the reasons discussed above, the contract as a whole is governed by the general limitations statute, N.Y. CPLR § 213. To the extent that the UCC might be applicable to the warranty claim, the warranty claim nevertheless is timely. Under N.Y. UCC § 2–725(2), when a warranty extends to future performance and discovery of breach of the warranty must await the time of such future performance, the cause of action accrues when the breach is or should have been discovered. *Id.*; *Liecar Liquors, Ltd. v. CRS Business Computers, Inc.*, 205 A.D.2d 868, 870, 613 N.Y.S.2d 298, 299 (3d Dept. 1994). The evidence in this case shows that the facility had met the performance standards established by the contract at the time that AES accepted delivery. (STX 9) The first evidence of any problems with the facility that has been presented shows that when the facility was restarted in November 1990, after a scheduled shutdown for maintenance, the facility's alarms went off, possibly indicating problems with the steam turbine's speed control system. (STX 18, Part 2, Enc. No. 5 at 307–25) Even assuming that this

should have been sufficient to put AES on notice of a breach of the alleged warranty, the arbitration demand in 1992 came well within the four year limitations period provided by the statute.

▪ Finally, defendant has conceded that plaintiffs' tort claims, if arbitrable, are timely. (Tr. at 25) Under New York law, tort claims for injury to property are subject to a three year prescriptive period. N.Y. CPLR § 214.4 (McKinney 1990). A claim for damage to property caused by negligence in the performance of a contract, however, is governed by the six-year statute of limitations for actions on contracts. *Video Corp. of America v. Frederick Flatto Associates, Inc.,* 58 N.Y.2d 1026, 462 N.Y.S.2d 439, 448 N.E.2d 1350 (1983). Applying either period, plaintiffs' tort claims are timely, since they accrued when the injury was suffered. *Ackerman v. Price Waterhouse,* 84 N.Y.2d 535, 542, 620 N.Y.S.2d 318, 321, 644 N.E.2d 1009, 1012 (1994). Plaintiffs' injuries occurred when the plant was put out of service on January 9, 1991. The demand made in December 1992 is within either the three- or six-year limitations periods.

*Arbitrability of Tort Claims*

▪ Despite conceding the timeliness of plaintiffs' tort claims, defendant contests their arbitrability. The contract provides that "[a]ll Disputes between the parties hereto shall be resolved ... by an arbitration panel[.]" (STX 1, Art. 34.1) Defendant contends that the definition of "Dispute" contained in the contract excludes tort claims:

> *"Dispute"* means any claim, disagreement or other matter in question between the parties that arises with respect to the terms and conditions of this Agreement or with respect to the performance by the parties of their respective obligations under this "Agreement." (STX 1, Art. 2.4.13)

Defendant fails to explain, however, why tort claims stemming from damage to the facility allegedly caused by defendant's negligence or provision of defective products is not within the scope of the phrase "any claim that arises

... with respect to the performance by the parties of their respective obligations under th[e] Agreement."

▪ The Supreme Court has held that where the factual allegations underlying claims "touch matters covered" by an arbitration agreement, the claims are arbitrable. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 3352, n. 13, 87 L.Ed.2d 444 (1985). In so holding, the Court approved this language of the Court of Appeals:

> "The question is not whether the arbitration clause mentions ... any ... particular cause of action, but whether the factual allegations underlying [the parties' claims and defenses] are within the scope of the arbitration clause, whatever the legal labels attached to those allegations." *Id.* at 622 n. 9, 105 S.Ct. at 3351 n. 9, *quoting* 723 F.2d 155, 159 (1st Cir.1983).

*Accord, Paver & Wildfoerster v. Catholic High School Ass'n,* 38 N.Y.2d 669, 382 N.Y.S.2d 22, 345 N.E.2d 565 (1976).[11] Under *Mitsubishi,* therefore, tort claims are covered by contractual agreements to arbitrate if the factual allegations underlying the claims are related to matters that are clearly arbitrable. *See, e.g., Wagoner,* 944 F.2d at 121–22 (holding securities fraud claims arbitrable). Determining whether the products procured by defendant were defective, and whether defendant's employees were negligent in performing their duties under the contract—such as installation, testing or design of the facility—clearly "touches matters" that relate to plaintiffs' breach of contract claims as well. This is particularly so given that defendant denies any breach of contract in part by contending that the breakdown of the steam turbine was caused by negligence of AES employees. Accordingly, plaintiffs' tort claims are within the scope of the arbitration clause.

*Conclusion*

Plaintiffs' claims are not barred by the applicable statutes of limitations. The peti-

---

**11.** California law applicable to interpretation of the scope of arbitration agreements is essentially the same as federal and New York law on this

point. *See Writers Guild of America, West, Inc. v. Merrick,* 130 Cal.App.3d 212, 218–19, 181 Cal. Rptr. 530, 533–34 (1982).

tion to compel arbitration is granted. As the Court has disposed of this matter solely on the basis of the stipulated record, each party's motion to strike portions of the other's submissions is denied as moot. The Clerk will enter final judgment (1) declaring that plaintiffs' claims are not barred by the statute of limitations, and (2) directing the parties to proceed to arbitration.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to FED.R.CIV.PROC. 52.

SO ORDERED.